## Ex parte SMITH.

No. 7645.   Opinion Filed January 11, 1916.

(154 Pac. 521.)

1. **STATUTES—Enactment—Initiative and Referendum Election—Proclamation—Publication.**   When the Governor duly issues a proclamation calling an election under the initiative and referendum upon a state question, and said proclamation is filed in the office of the Secretary of State, where all persons may have access thereto and procure copies thereof, this will be sufficient publication of same.

2. **SAME—Statutory Provisions—Purpose.**   Under sections 3384 and 3401, Rev. Laws 1910, it is the duty of the State Election Board where an election is had upon a date other than the general election in November, to forward to the county election board not later than 40 days before such election a sufficient number of copies of the text of the measure to be voted upon, together with a copy of the arguments for and against such measure and a copy of the official ballot, bound together in a single pamphlet, with a table of contents, to supply every voter therewith, and an additional number equal to 10 per cent. of the number of such voters, and it is the duty of the county election board to immediately distribute them to the precinct election inspectors, each of whom should, not later than five days prior to such election, convoke, hold, or cause to be held public meetings of the electors of his district and distribute or cause to be distributed such pamphlets to the assembled voters, and to use all other diligent means of distributing them to all the voters of such election precinct.

3. **SAME.**   The purpose of this provision is to place in the hands of every voter in the state the text of the proposition to be voted upon, with copy of the official ballot and the arguments for and against such proposition, so that the voters may have an opportunity to acquaint themselves with the merits thereof and cast an intelligent ballot thereon.

4.    **SAME—Validity.** And while by section 3393 it is provided that the procedure regulating elections under the initiative and referendum is not mandatory, yet a substantial compliance therewith is required, and where it appears that by reason of the failure to substantially comply with the provisions of section 3384 a sufficient number of electors have been deprived of the opportunity to exercise their franchise to change the result of the election had they participated therein, same will not be upheld.

5.    **STATUTES — Initiative and Referendum Election — Validity.** **Held,** under the facts disclosed in the opinion, there was not a substantial compliance with the law and the election held August 4, 1914, upon State Question No. 62, cannot be sustained.

6.    **SAME—Canvassing of Returns.** Where the State Election Board met in regular session to canvass the returns of a primary election at which certain state questions were voted upon, and proceeded to canvass the returns upon such state question, but prior to the completion of such canvass one of the members absented himself from the sessions of said board on private business, and thereafter the remaining members completed the canvass and certified the result to the Governor, their action in so doing is valid, and will be upheld.

7.    **STATUTES—Suspension of Operation—Referendum Petition— Effect of Filing.** The filing of a petition referring to the people an act passed by the Legislature suspends the operation thereof until the same shall have been approved by a majority of the votes cast at an election held thereon.

(Syllabus by the Court.)

Habeas Corpus by J. P. Smith. Writ granted.

*McAdams & Haskell,* for petitioner.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for respondent.

HARDY, J. Petitioner applies for a writ of *habeas corpus,* and alleges that he is unlawfully restrained of his liberty by the sheriff of Oklahoma county under and by virtue of an information charging him and others with a violation of the provisions of section 1, c. 128, Session Laws 1913, relating to gaming; that said section and chapter were not in force as valid and subsisting laws

at the time said information was filed or at any time since, for the reason that a petition in due form was filed within 90 days after the final adjournment of the Legislature, referring same to the people for approval or repeal, and that an election was had thereon on the 4th day of August, 1914, at which a majority of the voters voting upon said question voted against the repeal of said chapter. Petitioner alleges that said election is illegal because the law regulating same was not complied with in various material particulars, and that said act is still suspended by reason of the filing of said referendum petition.

On June 20, 1914, the Governor issued a proclamation calling an election upon said referendum petition, being State Question No. 62, to be held on August 4, 1914, the day upon which the primary election was held. Petitioner insists that said proclamation should have been published in some way or manner. The law makes no such provision. The proclamation was duly issued and deposited in the office of the Secretary of State, and was there among the archives of the state, and all persons desiring so to do could have access thereto and procure copies thereof. A similar question was determined by the Supreme Court of the United States in *Lapeyre v. United States,* 84 U. S. (17 Wall.) 191, 21 L. Ed. 606, where it was held that filing the proclamation of the President with the Secretary of State was a sufficient publication thereof. The witness Rainey, representing petitioners, claims he visited the office of the Secretary of State seeking information in reference to the issuance of such proclamation, and was informed that no such proclamation had been filed. He does not state definitely what date he made his inquiry,

but, conceding that he did, the proclamation was, in fact, issued and filed, and this was sufficient.

Section 3382, Rev. Laws 1910, requires that arguments for and against measures submitted shall be prepared by a joint committee of the House and Senate and a committee representing the petitioners. No arguments were offered on behalf of the petitioners, and, the Legislature having adjourned prior to the calling of said election, there was no joint committee of the House and Senate by which arguments could be prepared. Arguments were prepared by Senator Campbell Russell, a member of the State Senate, and by Fred S. Caldwell, purporting to be on behalf of the members of the Legislature and other citizens of the state. The State Election Board caused to be printed 150,000 pamphlets containing a text of the measure, ballot title, and arguments submitted, and of this number 4,000 were delivered to Senator Russell and by him distributed, and 146,000 were distributed by the State Election Board. These pamphlets were received by the State Election Board on the 24th of July and thereafter immediately mailed out to the secretaries of the various county election boards.

Sections 3384 and 3401, Rev. Laws 1910, requires the State Election Board, where the election on measures to be submitted to the people is held at a general election, to forward to the county election board of each county before the mandatory primary a sufficient number of such pamphlets to supply each voter of his county, and an additional number equal to ten per cent. of such number of voters, and requires the county election board at the time of furnishing the primary election supplies to furnish each inspector for each precinct wherein a primary election is to be held a sufficient number of copies of the text

of such measure to be submitted to popular vote, also a copy of the argument for and against such measure and a copy of the official ballot, bound together in a single pamphlet, with a table of contents, and further provides that, where the Legislature or the Governor shall order a special election for the purpose of referring such measure, the secretary of the State Election Board shall, not later than 40 days before any such special election, forward such pamphlets to the county election board of each county, who shall in like manner immediately distribute them to the election inspectors for each election precinct, and makes it the duty of each inspector, not later than five days prior to the election, to convoke, hold, or cause to be held a public meeting of the electors of his district, and distribute or cause to be distributed such pamphlets to the assembled voters, and use all other diligent means of distributing them to the voters of such election precinct.

At the general election held in 1912, there were cast for United States Senator 250,707 votes. Taking this as a basis, the State Election Board should have distributed 276,000 such pamphlets, when, as a matter of fact, only 150,000 were distributed, being 126,000 less than the amount contemplated by law. At the primary election August 4, 1914, there were cast for the respective candidates for the different parties for Governor 181,939 votes. There were cast, upon State Question No. 62, 139,080 votes. Of the total number of electors participating in the primary on that day 42,859 did not vote upon said State Question No. 62. At the general election in November there were cast for Governor 253,687 votes. The only means adopted by the State Election Board to place the pamphlets required in the hands of the voters

was to send them to the secretaries of the county election boards on various dates, commencing on the 24th day of July, and continuing thereafter until said pamphlets were distributed. In some of the counties, as shown by the evidence, and it is fair to presume the same condition existed throughout the state, the pamphlets were not distributed by the secretaries of the county election boards until the election supplies were furnished to the various precinct officials, and there was no general distribution of the pamphlets other than such as may have been made by the precinct officials on the day of the primary. If we take the figures of the general election in 1912 as a basis, there were 100,707 qualified electors in the state more than there were pamphlets printed, and, if the general election in 1914 be taken, there were 103,687 electors more than there were pamphlets printed and distributed. Petitioner urges that by reason of these facts the election was invalid. The Attorney General insists that the provisions of the initiative and referendum law are not mandatory, but directory, and that there was a substantial compliance with the terms of the law. By section 3393 it is provided that the provisions regulating the procedure in elections under the initiative and referendum are not mandatory, but, if substantially followed, will be sufficient, and, if the thing aimed at can be obtained, and procedure sustained, clerical and mere technical errors shall be disregarded. *Norris et al. v. Cross,* 25 Okla. 287, 105 Pac. 1000.

Petitioner insists that the election on August 4th was a special election, and that the provisions of section 3384 regulating special elections should have been complied with. The Attorney General says that this was a general election, and therefore such was not necessary.

Section 3384 requires that, when a state question is voted upon at a general election, before the mandatory primary pamphlets shall be placed in the hands of the precinct inspectors, who shall furnish to each and every voter on said primary election day a copy of the same. This provision has reference to general elections held in November, and the remainder of the section provides that, when any special election is called, they shall be furnished not later than 40 days before the date of said special election, and public meetings shall be held by the precinct inspectors not later than five days before the date of such special election. The purpose of this provision is to place in the hands of the voters of the state the text of the propositions to be voted upon, together with a copy of the official ballot and the arguments for and against such propositions, so that each and every voter of the state may have an opportunity to acquaint himself with the merits of the measure and the arguments for and against the same, and be prepared to cast an intelligent ballot upon said question. Amendments to the state Constitution may be adopted in the same manner, and, when measures of the highest public concern in which every citizen of the state has an interest are to be acted upon by the people at the polls, it is of the greatest importance that the electors be furnished with the information required by this section. If the provisions applying to a special election do not apply to an election on the date of the primary, there is no provision for furnishing the information required at such election. It would be more in harmony with the legislative intent to say that the statutes require in elections held upon dates other than the general election in November that the pamphlets shall be distributed in the manner required

for special elections.   It is doubtless the general rule, as stated in McCrary on Elections, section 179:

"That, where the election has been held at the proper time and the proper place, and the voters have had notice and participated in it, the want of such notice as the law provides will not render it void; but, if it appears that due notice has not been given, and that a portion of the voters have thereby been deprived of their right to vote and participate, if it appear that this deprivation is sufficient to change the result if they had voted on the one side or the other, in such a case the election is clearly void."

Upon State Question No. 62 the number voting "Yes" were 66,135, and those voting "No" were 72,945, being a majority against the repeal of said law of 6,810 votes. There were 42,000 voters taking part in this primary who did not vote for or against this measure.   There being 183,000 voters participating, there were 33,000 more electors than there were pamphlets printed.   There were, besides, more than 70,000 electors entitled to participate in said election who did not attend the polls that day, and we are unable to say how they would have voted had they been in possession of the information concerning this question that was to be voted upon, or whether they would have remained at home.

In *Town of Grove v. Haskell*, 24 Okla. 707, 104 Pac. 56, which involved a county seat election, it was held that, where the provisions with reference to notice were sub-. stantially complied with, and there was no averment or showing that the electors did not have actual notice or knowledge of the election, and failed to participate therein by reason thereof, the same would not be held void, and it was said in this connection:

"The vital and essential question in such cases is: Did the want of notice or knowledge result in depriving a sufficient number of the electors of the opportunity to exercise their franchise as to change the result of the election? If not, then the will of the electors, as expressed, should be sustained."

This case reviews the authorities upon this proposition.

A similar question was decided by the Supreme Court of Nevada in *State v. Davis,* 20 Nev. 220, 19 Pac. 894, where an amendment to the Constitution was voted upon, and it was held that the statutes of 1887 (page 122), providing for the publication of proposed amendments in a daily newspaper of general circulation for 90 days next preceding the general election at which the amendment was to be voted upon, and requiring that as many copies of such paper should be sent without extra compensation to the clerk of each county as there were registered voters therein, and by the clerk mailed to the voters, was a reasonable requirement sanctioned by the Constitution, and that amendments voted on without compliance with such requirements were inoperative.

In *State v. Sengstacken et al.,* 61 Or. 455, 122 Pac. 292, Ann. Cas. 1914B, 230, it is held:

"Where from the number of votes cast at a special election it appears by a comparison of the number of registered voters in the district that no different result was possible had all the voters participated in the election, the failure to comply with the statutory requirements in respect to giving notice will not invalidate the election; but where the statutory notice was not given, and it appeared that from the number of voters registered at the last general election a different result was possible had all voted, the election was invalid."

In *Guernsey v. McHaley*, 52 Or. 555, 98 Pac. 158, the court said:

"The courts are practically unanimous that, where the object of an election and the time and place are provided by general law, the requirement as to notice is directory, and a failure of the officer charged with the du of posting or publishing such notice to discharge his duty in that regard will not invalidate the election, and it seems equally as well settled that, if the time of the election is to be fixed by some public authority after the happening of some condition precedent, or if some * * * question in like manner is to be submitted to the voters at a regular election, the law authorizing such election, or the submission of such question, and providing for notice thereof, must be strictly followed. Cooley on Constitutional Limitations, section 603; *Marsden v. Harlocker*, 48 Or. 90, 85 Pac. 328 [120 Am. St. Rep. 786]; *George v. Oxford* Tp., 16 Kan. 72; *Stephens v. People ex rel.*, 89 Ill. 337."

"The reason for this distinction is that every voter is presumed to know the law and be thereby informed as to the time when, place where, and the officers to be elected, or matters to be determined at a general election held in pursuance to a public statute, and thus to be fully advised in the premises; but, where the election is not held in pursuance of such a general law, or some matter not provided in such law is to be determined thereat, this presumption does not arise, and the law authorizing such election or the submission of such question must be strictly pursued, and the required notice given."

*Guernsey v. McHaley*, supra; *Marsden v. Harlocker*, 48 Or. 90, 85 Pac. 328, 120 Am. St. Rep. 786; *State v. Staley*, 90 Kan. 624, 135 Pac. 602.

The law fixes the date of the general elections and determines the matters to be voted upon thereat, and each elector of the state is charged with notice of the pro-

visions of said law, but in special questions to be submitted, while the time and place may be fixed by law, yet the questions to be voted upon in the very nature of things cannot be regulated by statute, and in order for the voters to be acquainted with the questions submitted and to inform themselves as to the merits thereof the statute requires these pamphlets to be distributed, and, while section 3393 provides that a substantial compliance is sufficient, yet we think that there must be, in truth and in fact, a substantial compliance. When, as in this case, barely more than half the required number of pamphlets are distributed, and it appears from the actual figures that more than 70,000 voters remained away from the polls, and 42,000 participating in the election failed to vote upon the question submitted, and that there were 33,000 less pamphlets distributed than there were voters participating in the election, this was not a substantial compliance with these provisions within the meaning and intent of the statute with reference to the number of pamphlets distributed, nor were the same placed in the hands of the individual voters of the state in substantial compliance with the law.

It is further objected that the returns upon said proposition were canvassed by two members of the board, the third member not being present, and therefore there was no legal canvass of the result. The board met as required by law to canvass the returns of the primary election, and all the members thereof were present upon different dates during the progress of such canvass, and while canvassing the returns of the primary the returns upon State Question No. 62 were also canvassed as they came in, but prior to the final result one member of the board absented himself on private business, and there-

after the two remaining members continued the canvass, and certified the result to the Governor. There was no irregularity in the canvass, nor is there any claim made that the result as canvassed was incorrect. This objection is without merit.

It is further claimed in the petition that the Governor failed to issue a proclamation declaring the result. We take judicial knowledge of the fact that on September 14, 1914, the Governor issued his proclamation declaring the result of the election held on said State Question No. 62. 16 Cyc. 904; 4 Wigmore on Ev. sec. 2577; 1 Chamberlayne, Mod. Law of Ev. sec. 646. The fact that this is a meritorious measure can have no controlling weight; for if, because the measure is meritorious, the requirements of the law may be disregarded, measures that are pernicious and obnoxious may be submitted under like circumstances and be adopted. The question is of more importance than the merits of the measure under consideration. It involves the right of the electors of this state to be apprised of any proposed changes in the fundamental policies of the state as represented by proposed amendments to the Constitution or by changes in its general laws, and, these requirements being for the information and protection of the electors, substantial compliance therewith having been required, nothing less will suffice.

By reason of the failure to substantially comply with the requirements of the law regulating the distribution of pamphlets containing the text of the measure to be voted upon, the sample ballots, and the arguments for and against said measure, we think the election was invalid. The petition, having been filed referring this act to the people for approval or rejection, suspended the operation thereof until an election is had thereon (Const.

art 5, sec. 3; Williams' Ann. Const. sec. 53) ; and therefore said law was not in force and operative at the time of the matters and things complained of.

The petitioner is therefore discharged from custody.

All the Justices concur, except KANE, C. J., and TURNER, J., not participating.