## J. D. LEACH v. STATE.

No. A-3260—Opinion Filed March 23, 1920.

(188 Pac. 118.)

(Syllabus.)

1. **CONSTITUTIONAL LAW—Construction—Harmonizing Provisions.** No one clause of the Constitution should be construed by itself, and to the exclusion of other portions of the same instrument; but all portions of the Constitution relating to the same question should be construed together, and, as far as possible, harmonized with each other.

2. **CONSTITUTIONAL LAW—Statutes—Presumption of Validity.** It is well established that no enactment of the Legislature

should be held to be in contravention of the Constitution, unless its unconstitutionality is made to appear beyond any reasonable doubt.

3.  STATUTES—Constitutionality of Gambling Nuisance Statute. For reasons holding chapter 26, Session Laws 1916, a valid and constitutional enactment, and not a fraud upon the power of the referendum reserved to the people in article 5, Constitution, see body of opinion.

*Appeal from District Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

J. D. Leach was convicted of the crime of maintaining a public nuisance, and his punishment fixed at a fine of $500. Motion in arrest of judgment overruled, and he appeals. Affirmed.

On November 23, 1917, in the district court of Oklahoma county, information was duly filed giving the court to know and be informed that John D. Leach, plaintiff in error, defendant below, did on May 5, 1917, and up to and including September 14, 1917, in Oklahoma county, state of Oklahoma—

"feloniously keep, maintain, and manage the rooms on the second floor of the building located, described and designated as 219 North Broadway, * * * in Oklahoma City, Oklahoma county, and state of Oklahoma, in which said room and place, during the above-described period, there was opened, conducted, and carried on certain gambling games, to wit, poker and other gambling games played with cards for money, checks, credits, and other representations of value, * * * and that during said period of time, at said above-described place, so kept, managed, and maintained by the said J. D. Leach, numerous persons did congregate and resort to play at said games, and did play at said games for money, * * * all to the common nuisance of the public, and contrary to the form of the statute in such cases made

and provided, and against the peace and dignity of the state."

The statute referred to is set forth in chapter 26, Session Laws 1916, page 54, and is entitled:

"An act relating to gambling; providing penalties for running slot machines; providing civil penalties against owners of premises permitting same to be used in violation of this act; declaring places where persons congregate to play at games prohibited in section 1, a public nuisance; providing penalties against peace officers for gambling or encouraging gambling; prescribing the duties of peace officers relating to the enforcement of this act, and prescribing penalties for the violation thereof; repealing sections 2498, 2499 and 2507 of the Revised Laws of Oklahoma 1910; and declaring an emergency."

Section 1 of the act provides:

"Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, or who either as owner or employe, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony and upon conviction thereof, shall be punished by a fine of not less than five hundred dollars, nor more than two thousand dollars, and by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

The information was predicated on section 6 of the act, which reads:

"Any house, room or place where any of the games prohibited in section 1 of this act are opened, conducted or carried on, or where persons congregate to play at any such games is a public nuisance and the keeper and managers of any such nuisance, and persons aiding or assisting any

such keepers or managers in keeping or managing any such nuisance shall be guilty of a felony and upon conviction, shall be punished by a fine of not less than five hundred dollars nor more than ten thousand dollars or by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

On January 14, 1918, defendant appeared and moved to quash the information because he says in effect: That the same is drawn under and the prosecution thereof is predicated on chapter 26, Session Laws of Oklahoma 1916, which he says was not in force at the time of the filing of the information, nor is the same or any part thereof in force at this time as a valid and subsisting law of this state for certain reasons set forth in his said motion to quash; and prayed that said motion be sustained and that he be discharged. This motion was overruled and exceptions saved. On the same day he demurred to the information, which was overruled, and exceptions saved. There was a plea of not guilty, and trial to a jury, and a verdict of guilty "as charged in the information," and his fine was assessed at $500. Then was filed a motion in arrest of judgment, which was overruled, and exceptions saved, and defendant brings the case here.

*Turner & McAdams*, for plaintiff in error.

*S. P. Freeling*, Atty. Gen., and *W. C. Hall*, Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). For reversal, appellant contends that such part of the act, for the alleged violation of which he was convicted (chapter 26, Session Laws Oklahoma 1916), was not in force at the time of the filing of said information.

On April 4, 1893, there was approved the general act on the subject of "gaming" set forth in General Stat-

utes of Oklahoma 1893, § 2519 *et seq.* With the exception of sections 2531, 2532, 2533, and 2534, and sections 2536 and 2537, which were dropped, this act was carried into the revision of 1910 and is set forth in section 2498 *et seq.,* Revised Laws1910, with a few slight and immaterial changes in the verbiage.    As thus enacted the law denouncing "gaming" contained no provisions declaring the place where gaming is carried on to be a nuisance or the keeping or managing thereof a felony.

Then there was passed a general law upon the subject of "gaming," approved April 14, 1913 (Session Laws Oklahoma 1913, page 281), entitled:

"An act to amend sections 2519, 2520 and 2528 of the General Statutes of 1893 of the state of Oklahoma, relating to gambling; and providing penalties or running slot machines; and providing for civil penalty against owners of premises permitting same to be used in violation of section one of this act."

Amending section 2519, the first section of this act, in effect, provides that every person who opens, causes to be opened or conducts or carries on "any gambling game * * * played with any device for money" or "any representative of value," or who deals for any of those engaged in any of such games shall be guilty of a felony and upon conviction shall be fined not less than $500 nor more than $2,000 and imprisoned in the penitentiary for not less than one year nor more than ten.

Amending section 2520, section 2 of said act provides that every person who bets at any of said games or "at any game whatsoever, for money,. * * *or other representatives, * * *shall be guilty of a misdemeanor, * * * punishable by a fine of not less than $25 nor more than $100,

or by imprisonment in the county jail for * * * for not less than one day nor more than thirty days, or by both."

Amending section 2528, section 3 of said act makes it the duty of the magistrate to whom anything is delivered suitable for use in gambling and used in violation of the act, either before or after the accused is examined by him, to determine the character of the thing delivered, and if he finds that it was used or intended to be used by the accused or others in violation of the act, commands him to deliver to the sheriff to await the order of the district court: Provided, etc.

By way of new and additional legislation, section 4, in effect, provides that any person who sets up, operates, or conducts in or about his place of business, any slot machine for the purpose of having it played by others for money or any representative of value shall be guilty of a misdemeanor punishable by a fine of not less than $25 nor more than $100, or by imprisonment in the county jail not more than thirty days, or by both such fine and imprisonment.

Also, by way of new and additional legislation, section 5, in effect, provides, that it shall be unlawful for the owner of any real estate, to use, rent, or lease or permit it to be used for the purposes of violating section 1 of the act, and that any person who shall violate the provisions of section 5 shall be liable to a penalty of not less than $1,000 to be recovered at the suit of the state; also that the penalty so recovered shall be a lien on the property so used and providing for its sale, etc.: Provided, etc.

Also, as new and additional legislation, section 6, in effect, provides that any owner, proprietor, or person in charge of any cigar stand or place where articles are kept

for sale, who shall suffer, allow, or permit any person to play dice or any other game or device of chance at or in such cigar stand or place, shall be guilty of a misdemeanor punishable by a fine of not less than $25 nor more than $100.

The people by proper petition, filed in due time with the secretary of state, demanded the referendum on the act approved April 14, 1913, whereupon the Governor issued his proclamation calling an election upon said petition, being state question No. 62, to be held August 4, 1914, which was done, and the validity of said election being subsequently assailed, it was held by the Supreme Court to have been invalid in *Ex parte Smith,* 49 Okla. 716, 154 Pac. 521, for the reason that there was not a substantial compliance with the law regulating elections under the initiative and referendum in submitting said question to the people. In said opinion it was further held:

"The filing of a petition referring to the people an act passed by the Legislature suspends the operation thereof until the same shall have been approved by a majority of the votes cast at an election held thereon."

Before any subsequent submission was ever made of state question No. 62 (the reference on the act relating to gambling approved April 14, 1913), the Legislature again met in session and passed an act, declaring an emergency, approved January 29, 1916 (chapter 26, Session Laws 1916, page 54), entitled:

"An act relating to gambling; providing penalties for running slot machines; providing civil penalties against owners of premises permitting same to be used in violation of this act; declaring places where persons congregate to play at games prohibited in section 1, a public nuisance;

providing penalties against peace officers for gambling
or encouraging gambling; prescribing the duty of peace
officers relating to the enforcement of this act, and pre-
scribing penalties for the violation thereof; repealing sec-
tions 2498, 2499 and 2507 of the Revised Laws of Okla-
homa 1910; and declaring an emergency."

Section 1 of this act is a re-enactment, in *haec verba,*
of section 1 of the act approved April 14, 1913 (Session
Laws of Oklahoma 1913, page 281), referred to the people
as stated. Section 2 of this act is a re-enactment of section
2 of the act approved April 14, 1913, with the exception
that the first word in the section is changed from "every"
to "any," and "is punishable" is changed to "upon convic-
tion thereof shall be punished," and the word "dollars"
inserted in the next line. In section 3 of this act after the
word "magistrate" is inserted "or justice of the peace," and
in the fourth line, instead of "pursuant to the foregoing
section," is inserted "as provided by law," and later in the
proviso to this section is inserted "of the." Section 4 of
the act of April 14, 1913, is re-enacted by section 4 of
this act, in *haec verba,* except the proviso at the end of the
section, which is dropped.

Section 5 of this act re-enacts, in *haec verba,* section 5
of the act of April 14, 1913, except that "to be" is substi-
tuted for the word "so" in the tenth line, "county clerk"
is substituted for "register" in the thirteenth, and in the
nineteenth line, after "administrator," is inserted "appointed
by a court of competent jurisdiction."

Section 6 of this act, upon which the prosecution is
based, is a new section. Section 7 of this act is a re-en-
actment of section 6 of the act of April 14, 1913, and sec-
tions from 8 to 15, both inclusive, of the act of January
29, 1916, are new.

Counsel for appellant contends that the Legislature, by the act of January 29, 1916 (chapter 26, Session Laws 1916, page 54), on which this prosecution is based, intended to repeal the act of April 14, 1913, by re-enacting the same with additional new sections, thus substituting the latter for the former act, and by this means defeating the referendum.

By chapter 26, Session Laws 1916, sections 2498, 2499, and 2507 of the Revised Laws of Oklahoma 1910, were expressly repealed. These were the identical sections attempted to be amended by the act of April 14, 1913, and as the Legislature of 1916 expressly repealed these sections, it left nothing for the act of 1913, which had been suspended by the referendum, to operate upon, so that as to those particular sections the effect of the enactment of chapter 26, Session Laws 1916, was to defeat and render inoperative for all future time, if said act be held to be constitutional, the referendum demanded upon said act of April 14, 1913. This conclusion may also apply with equal force to those sections of the act of April 14, 1913, which were new legislation, and which were afterwards incorporated in substance in the act of 1916 (chapter 26, *supra*).

To state succinctly the contention of counsel for appellant, it is this:

"The effect of the action of the Legislature in passing chapter 26, Session Laws 1916, if sustained, would be to take the act referred away from the people before they had a chance to vote on it, and put it in force as part of the substituted act, irrespective of the wishes of the people, thereby working a fraud upon the referendum and in effect nullifying the right of the referendum reserved to the people in sections 1, 2, 3, and 4 of article 5 of the Consti-

tution, as to so much of said act afterwards incorporated in the act of 1916 passed with the emergency."

Section 1 of article 5, Constitution, provides:

"The legislative authority of the state shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature."

Section 2, *Id.*, after making provision as to the right of legal voters to propose legislation by the initiative, states:

"The second power of the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted."

Section 3, *Id.*, in part provides:

"The veto power of the Governor shall not extend to measures voted on by the people. * * * Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise."

Section 4, *Id.*, provides:

"The referendum may be demanded by the people against one or more items, sections, or parts of any act of the Legislature in the same manner in which such power may be exercised against a complete act. The filing of a referendum petition against one or more items, sections, or parts of an act shall not delay the remainder of such act from becoming operative."

Section 6, *Id.*, provides:

. "Any measure rejected by the people, through the powers of the initiative and referendum, cannot be again proposed by the initiative within three years thereafter by less than twenty-five per centum of the legal voters."

Section 7, *Id.*, provides:

"The reservation of the powers of the initiative and referendum in this article shall not deprive the Legislature of the right to repeal any law, or propose or pass any measure, which may be consistent with the Constitution of the state and the Constitution of the United States."

Construing sections 1, 2, and 3 of article 5, *supra*, counsel for appellant contend that as to initiative measures the same become effective if approved by a majority of the votes cast at the election, but that in treating of the referendum the framers of the Constitution did not stop at merely prescribing the condition precedent as to when a legislative act referred should take effect, but went further and provided an additional safeguard around the reserved right that such an act should not take effect until approved by a majority of the votes cast thereon, and not otherwise.

It is contended further in this connection that the words "and not otherwise" must be given some force and effect in addition to the condition precedent prescribed by the word "when," and that it means that the act shall not take effect in any other way or ways or under any other circumstances than upon the performance of the condition precedent, which plainly means that it shall not take effect by a subsequent act of the Legislature, as here attempted. In other words, when the Constitution prescribes a condition precedent which, when performed, the act shall take effect, and adds "and not otherwise," it designates a cir-

cumstance which, when it happens, the act takes effect by
operation of law, and, when it adds "and not otherwise,"
it means that the act shall take effect and be in force upon
the happening of no other circumstance than the circum-
stance specified in the context.

Counsel also contend:

"This excludes the idea that, pending action by a vote
of the people upon the act referred, the Legislature can
(by action here taken) in effect take away from the peo-
ple and put it in force and effect themselves, for the reas-
on that such action would be putting it in force and effect
otherwise than by a majority vote of the people upon the
referendum."

Further, counsel contend that section 7 of article 5
cannot be construed to give the Legislature the right to pass
the legislation assailed, for the reason that, if the present
act should be upheld, it would nullify that part of the Con-
stitution reserving the referendum to the people, and the
Legislature had no right to pass the 1916 act, because, un-
der section 7 of article 5, said section only confers the right
where the measure is consistent with the Constitution of
the state, and being inconsistent with the spirit of that part
of the Constitution reserving to the people the referendum,
it was not a proper subject of legislation and must fail.

The brief filed by counsel in behalf of appellant con-
tains a very able and learned discussion of the questions in-
volved, and as the question presented is one of first impres-
sion in this jurisdiction, a careful consideration has been
given to the authorities cited both by counsel for appellant
and by the Attorney General.

It is a familiar rule of constitutional construction
that—

"No one clause of the Constitution should be construed by itself, and to the exclusion of the other portions of the same instrument; but all portions of the Constitution, relating to the same question, should be construed together, and, as far as possible, harmonized with each other." *Anderson v. State,* 7 Okla. Cr. 135, 123 Pac. 444.

It is also well established that no enactment of the Legislature should be held to be in contravention of the Constitution, unless its unconstitutionality is made to appear beyond any reasonable doubt. *McCord v. State,* 2 Okla. Cr. 215, 101 Pac. 280; *State v. Coyle et al.,* 7 Okla. Cr. 50, 122 Pac. 243.

Bearing in mind the foregoing familiar rules of construction, attention is directed at this time to section 36, article 5, Constitution, which provides:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant or authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

In *State ex rel. Caldwell v. Hooker, County Judge,* 22 Okla. 712, 98 Pac. 964, the Supreme Court of this state held:

"A restriction or limitation upon the power of the Legislature, upon any subject of legislation, will not be presumed or implied, unless from the entire instrument it clearly appears that it was so intended."

In the body of the opinion it is said:

"The power being reserved to the people to propose laws and amendments to the Constitution, and to enact or reject the same at the polls, independent of the Legislature,

and also to approve or reject any of its acts, at the same
time it being stipulated that the reservation of such power
should not deprive the Legislature of the right to repeal any
such law, or to propose or pass any measure which otherwise
might be consistent with the Constitution of the state and
of the United States, to avoid all those perplexing con-
stitutional questions which have arisen in other states rela-
tive to restrictions by implication of legislative power is
an additional reason for inducing the ingrafting of the
provision contained in section 36, art. 5 (Bunn's Ed. §
109), *supra.*

While it is not expressly held in the case of *State ex
rel. Caldwell v. Hooker, supra,* that section 7 of article 5,
Constitution, construed in connection with section 36 of
the same article, grants absolute power and authority to
the Legislature to act upon any legitimate subject of legis-
lation, without restriction imposed by the reserved powers of
the referendum, the language in said opinion above quoted
can have no other meaning. Section 7 of article 5 expressly
states that the reserved powers of the initiative and referen-
dum shall not deprive the Legislature of the right to repeal
any law, propose or pass any measure, which may be con-
sistent with the Constitution of the state and of the United
States. In the case of *State ex rel. Caldwell v. Hooker,
supra,* the Supreme Court said that this means "which may
be otherwise consistent" with the Constitution of the state
and the Constitution of the United States, thereby in ef-
fect saying that no act of the Legislature otherwise consti-
tutional should be set aside because in contravention of the
powers reserved to the people by the referendum.

Section 3 of article 5 also provides:

"All elections on measures referred to the people of the
state shall be had at the next election held

throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference."

It is to be presumed that the framers of the Constitution acted advisedly when they placed the foregoing provision in the Constitution. The purpose of this provision was evidently to require an election to be held upon the referred measures prior to the regular meeting of the next general legislative assembly. Either the Governor or the Legislature must order a special election for the express purpose of voting on referred measures, and where no special election is called, then the Governor must submit the measure at the next election throughout the state. Provision having been made for elections throughout the state between the convening of the regular biennial sessions of each Legislature, the requirement of section 3, article 5, as to the submission of referred measures, would necessitate some action upon such measures between the time of the adjournment of the session of the Legislature which passes the act upon which the referendum is demanded and the convening of the next succeeding Legislature. This was an additional reason, perhaps, for leaving untrammeled, by the provisions of the initiative and referendum, the power of the Legislature subsequently to propose and pass legislation otherwise consistent with the Constitution of the state and the Constitution of the United States.

At a general primary election held throughout the state in August, 1914, the gambling act passed by the Legislature of 1913 was submitted to popular vote in the manner required by law, and although this election was held to be invalid in *Ex parte Smith, supra,* a great majority of the voters voting on the question voted to approve the law,

so that it was not by reason of the failure of the act to receive the requisite number of votes that impelled the Supreme Court to hold the act inoperative, but upon other grounds which appeared sufficient to the court at that time to hold that the provisions of the statutes relative to the submission of referred measures had not been substantially complied with.

All these matters were before the Legislature when the Governor convened the extraordinary session in February, 1916, and specifically submitted to such Legislature the question of appropriate legislation along the lines contained in the act of April, 1913, which had failed of approval by the people for the reasons heretofore stated. In presenting the argument that to hold the act here under consideration as valid and constitutional legislation a fraud would be perpetrated upon the people, counsel for appellant rely upon the case of *In re Megnella*, 133 Minn. 98, 157 N. W. 991, wherein the Supreme Court of Minnesota in construing the authority of a legislative body, to wit, a city counsel, under a charter granted to said city by the Legislature of such state, held in substance that where the charter provides for the referendum, and states (referring to an ordinance) : "It shall be suspended·from going into operation; if not repealed by the council, it is to be submitted to a vote of the electors, * * * and be operative only if it receive a majority vote"—that while the ordinance was being regularly submitted to the people, and the council could not repeal and re-enact the same law during such period.

If it be conceded that the decision in *Re Megnella* is sound, it only holds that the power of the legislative body to subsequently put into effect the same law is a fraud upon the people, when the same law is·re-enacted during the

period of time a reference is pending against it. The provisions of section 3 of article 5 of the Constitution of this state, heretofore quoted, with reference to holding elections on referred measures, in our opinion form the basis for determining the period of time in which the Legislature is without authority to repeal or re-enact a measure regularly before the people for approval or rejection, which period is necessarily from the date of filing a valid petition for reference to the date the referendum vote is had. This indeed is the most liberal view for the appellant that could be taken of our constitutional provisions. Otherwise, the Governor, by failing or refusal to submit the question at the next general election, could work a fraud upon the people and the Legislature (1) by depriving the people of an opportunity to approve or reject the law; (2) by forever depriving the Legislature of the right to subsequently enact appropriate legislation upon the same subject.

Considering, then, all the constitutional provisions relating to the subject under consideration, it is apparent that by reserving the power to initiate and refer legislation the people never intended to deprive a Legislature which met subsequent to an election held throughout the state, at which referred measures passed by a previous Legislature are required to be submitted to popular vote, of the powers which such a Legislature would ordinarily have possessed, had not the reserved powers of the initiative and referendum been placed in the Constitution. After the date at which an election is held on a referred measure, although such election be held to be invalid, a subsequent Legislature was authorized to consider the act referred as having been rejected, and to propose and pass appropriate legislation upon the same subject, without deprivation by reason of any-

thing contained in the initiative and referendum provisions of the Constitution, and if the Legislature does so by a law declaring an emergency, which is appropriate and necessary for the immediate preservation of the public peace. health, or safety, no referendum may be had upon such an act. The people must resort to the initiative, either by passing in that way subsequent inconsistent legislation on the same subject, or by an amendment to the Constitution itself. To otherwise construe the Constitution, no force and effect whatever could be given to sections 7 and 36, article 5, *supra*.

In order, therefore, to give force and effect to all portions of the Constitution relating to this question, and construing the same together, it cannot be held that the words "and not otherwise," contained in section 3, article 5, are to be considered by themselves and as a limitation upon subsequent legislative action upon the same subject contained in a referred measure, after there has been a submission of such referred measure and a vote of the people taken thereon. To sustain the contention advanced by counsel for appellant that the passage of the act of 1916 (chapter 26, Session Laws 1916) was a fraud upon the referendum would be to give force and effect by implication to the words "and not otherwise," contained in section 3, article 5, Constitution, not clearly intended from the context of other sections of the same article bearing on the same question, a construction not permissible under the well-established rule heretofore announced; a contruction condemned by the most eminent authorities on constitutional law; a construction which, if followed, would work a plain fraud upon the people and upon the Legislature.

For the reasons stated, therefore, the conclusion is reached that chapter 26, Session Laws of Oklahoma of 1916, relating to gambling, is a constitutional enactment, and was in full force and effect at the time this prosecution was commenced, and that the trial court did not err in overruling the motion to set aside the information and the motion in arrest of judgment.

The judgment of conviction is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.