Dear Representative Claunch,
¶ 0 This office has received your request for an official Attorney General's Opinion in which you ask, in effect, the following question:
 Under the provisions of Article V, Sections 1, 2, 3, and 4 of the Oklahoma Constitution, may the people through the petition process order a referendum on a bill passed by the Oklahoma Legislature in which the Legislature itself sends the matter to a vote of the people by way of a legislative referendum?
¶ 1 Article V, Section 1 of the Oklahoma Constitution vests the legislative authority of the State in the Legislature. However, the people reserved for themselves the power of both initiative and referendum, providing in pertinent part that:
 The people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.
Id. (emphasis added).
¶ 2 In more specifically defining the reserved power of the people to approve or reject acts of the Legislature, the provisions of Article V, Section 2 provide in pertinent part that:
 The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the State office receiving the highest number of votes at such election.
Id. (emphasis added).
¶ 3 When a referendum is brought about by virtue of a petition signed by five percent of the legal voters, the petition, in accordance with the provisions of Article V, Section 3 of the Oklahoma Constitution, must be filed within ninety days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is sought. Id. Section 3 of Article V also makes clear that any measure referred to the people by way of referendum shall take effect and be in force only if approved by a majority of the votes cast at the election held to consider the referred matter:
 Referendum petitions shall be filed with the Secretary of State not more than ninety (90) days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures voted on by the people. All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative or referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise.
Id. (emphasis added).
¶ 4 As we can see from the provisions of Article V, Sections 1,2 and 3 of the Oklahoma Constitution, legislation through the referendum process may be referred to the people for their rejection or approval in two distinct ways. In describing the referendum the Oklahoma Supreme Court held:
 For a referendum measure is (1) where either the Legislature enacts a law and provides that the same shall not take effect and be in force until it shall have been approved by a majority of the votes cast thereon at an election at which it is to be submitted, or (2) when an emergency is not declared to such measure by virtue of section 58, art. 5, of the Constitution, and within 90 days after the adjournment of the session of the Legislature at which it was passed, a petition signed by 5 per cent. of the legal voters, based upon the total number of votes cast at the last election of the state office receiving the highest number of votes at such election, is filed with the Secretary of State, demanding it to be submitted to the people for their approval or rejection. See section 7, art. 9, Const. Okl.
In re Initiative Petition No. 2, 109 P. 823, 824 (Okla. 1910) (emphasis added).
¶ 5 In explaining the nature of the referendum petition process in In re Referendum Petition No. 1, 220 P.2d 454 (Okla. 1950), the court held that through the petitioning process the people have the right to take away from the Legislature the ultimate right to determine whether legislation shall be adopted or rejected, stating:
 [T]he people, upon a petition signed by the requisite number of electors, have the right to take away from the legislature the ultimate right to determine whether such legislation shall be adopted and to decide for themselves by their vote whether such proposed legislation should be adopted or rejected.
Id. at 459 (emphasis added).
¶ 6 When a petition referring an act to the people for approval or rejection is filed, the effect of the filing is to suspend the operation of the law enacted by the Legislature "until an election is had thereon." Ex parte Smith, 154 P. 521, 525
(Okla. 1916)
¶ 7 The question you pose deals with a situation where the Legislature passes a bill which proposes new law, but refers that new law to the people for approval or rejection. This was done recently in the 2003 First Regular Session of the 49th
Legislature when the Legislature passed House Bill 1278, which proposes the legalization of a state lottery, and established a regulatory scheme under which the lottery would be conducted. In Section 1 of House Bill 1278, the Legislature, under the provisions of Article V, Section 3 of the Oklahoma Constitution, specifically referred the proposal to the people for a decision. Section 1 of the bill provides:
 SECTION 1. Pursuant to Section 3 of Article V of the Oklahoma Constitution, there is hereby ordered the following legislative referendum, which shall be filed with the Secretary of State and addressed to the Governor of the state, who shall submit the same to the people for their approval or rejection at a special election on a day set by the Governor.
2003 Okla. Sess. Laws ch. 58, § 1 (emphasis added).
¶ 8 You asked, in essence, whether the people through the referendum petition process can nullify a Legislative Referendum — a measure referred to the people by the Legislature itself for the people's rejection or approval at the polls.
¶ 9 The purpose of a referendum by petition is to enable the people to stop a legislative enactment which, but for the petition seeking referendum, would become law ninety days after the adjournment of the legislative session at which the law was passed. In the situation anticipated in your Opinion request, no legislation would become law automatically ninety days after the adjournment of the session at which the law was enacted, as the enactment itself was a referendum — a referral of a matter to the people for their rejection or approval at an election. As the enactment in question constitutes a referendum, there is no statute which will automatically go into effect without the people's approval, and accordingly a petition referendum is not available as the matter is already being submitted to the people for approval or rejection. In the context of municipal ordinances, several courts have considered whether a matter sent to the people for approval or rejection at the polls by the city council or similar governmental entity was subject to a referendum petition; all concluded that a referendum petition was not available in such instances, as the matter has been referred to the people.
¶ 10 In Campbell v. City of Eugene, 240 P. 418 (Or. 1925), the Oregon Supreme Court rejected the argument that a reference petition would be available, stating:
 A charter amendment to the city charter of Eugene can be proposed by resolution by the common council, and the common council can then by ordinance call a special election, providing and giving to the electors the privilege of voting either for or against the proposed charter amendment. If it should be held that the action of the council in so ordering the election should be subject to the referendum, the situation would be peculiar. It would be to the effect that the electors of the city would have the right to vote at an election upon the question as to whether an election should be held, to which they would vote upon another question, or the same question, at a succeeding election. If the second question should be attempted to be referred to a special election by a second ordinance ordering a special election for that purpose, then the second ordinance under the same process of reasoning could be referred to the people and so on, ad infinitum.
Id. at 423.
¶ 11 The court also reasoned that an ordinance in itself providing for a referendum is not subject to a petition referendum as such an ordinance was not "municipal legislation," but was merely execution of an already existing state law providing for enactment of ordinances by the city council for holding special elections on municipal measures, and was therefore not a legislative act within the purview of the referendum provisions. Id. at 421-22.
¶ 12 Similarly, in Langdon v. City of Walla Walla, 193 P. 1
(Wash. 1920), the court considered a contention that an ordinance providing for the acquisition of property for construction of a city water supply system, and providing for the issuance of bonds to pay for the system, which ordinance by its own terms submitted the matter to a vote of the people, was not subject to a referendum:
 It seems to us that this ordinance, in so far as it submits the proposition of making the improvements and the issuance of the bonds to pay therefor, is in no event subject to a referendum; because by its very terms in that regard, and by the express provision of the statute under which it was passed, it is within itself a providing for a referendum,
Id. at 468 (emphasis added).
¶ 13 In Roy v. Beveridge, 266 P. 230 (Or. 1928), that state Supreme Court, relying in part on the decision in Campbell,
held that an ordinance submitting to the vote of the people a proposed ordinance under which electrical power companies franchises would be consolidated, was not subject to a referendum, stating, "[t]o refer a call for a referendum would institute a series of referenda and would lead nowhere." Id. at 232.
¶ 14 In conformity with these cases, and the intent and purpose of a referendum petition, we conclude that when the Legislature enacts a bill which proposes a measure and refers the measure to the people for their approval or rejection, the bill is not subject to a referendum petition because the bill itself, being a Legislative Referendum, already refers the measure to the people for their approval or rejection.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 When the Legislature — in the exercise of its power under Article V, Section 3 of the Oklahoma Constitution — enacts a bill which proposes a measure, and refers the measure to the people for their approval or rejection, the bill is not subject to a referendum petition because the bill itself, being a Legislative Referendum, already refers the matter to the people for their approval or rejection.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 NEAL LEADER Senior Assistant Attorney General