In re REFERENDUM PETITION NO. 1, ORDINANCE 6-B, CITY OF SAND SPRINGS.

No. 32828.   July 11, 1950.

*220 P. 2d 454.*

Marvin T. Johnson and Pinkerton & Wills, all of Tulsa, for proponents.

Coffey & Coffey, of Tulsa, for protestants.

O'NEAL, J.  This is an appeal from a decision of the city clerk of the city of Sand Springs, Oklahoma, holding and declaring insufficient a referendum petition in the adoption of an ordinance of the said city.

From the record it appears that on August 13, 1946, the board of commissioners of the city of Sand Springs— said board being the legislative body of said city—adopted an ordinance des-

ignated as Ordinance 6-B dealing with the installation and operation of parking meters in said city. Said ordinance was adopted or passed by a majority of the three members of the board, one member dissenting thereto. Thereafter, on August 27, 1946, a copy of a referendum petition was filed in the office of the city clerk, having for its purpose the commencement of proceeding to refer the matter of adoption of said ordinance to a vote of the electors of said city; September 5, 1946, notice of the filing of said copy of said petition was published, and on September 11, 1946, there was filed with the city clerk and mayor a referendum petition against said ordinance bearing the signatures of 476 persons purporting to be duly qualified voters of said city. September 23, 1946, F. F. Ashby filed a protest as to said referendum petition. Thereafter a hearing was conducted by the city clerk and he found and held said referendum petition insufficient.

The proponents of said referendum petition appealed to this court. The matter was referred to the Honorable Marion Northcutt, one of the referees of this court, for a hearing with directions to make findings of fact and conclusions of law and report the same to this court. The matter was set for hearing before the referee on October 12, 1949. It was stipulated that the number of qualified voters residing within the city of Sand Springs was 1,086. In the meantime, September 10, 1949, there had been filed a motion by F. F. Ashby and the city of Sand Springs to dismiss the appeal herein. The grounds for the motion are that the subject matter of said appeal has become and is now a moot case for the reasons:

"1. That heretofore, to-wit, on the 9th day of August, 1949, the Board of Commissioners of the city of Sand Springs, in regular meeting assembled, did pass and approve Ordinance No. 17B, which ordinance had for its purpose the repealing or Ordinance 6B, same being the ordinance in question involved in said appeal, the title to Ordinance 17B being as follows:

" 'An ordinance rescinding and repealing Ordinance No. 6B, the same being an ordinance passed and approved by the Board of Commissioners of the City of Sand Springs, Oklahoma, on the 13th day of August, 1946, relating to traffic, and regulating the use of public streets and highways of the City of Sand Springs and providing for the installation, regulation and control of the use of parking meters, and parking meter zones.' "

To the motion to dismiss, and made a part thereof, was a copy of Ordinance 17-B, referred to in the motion to dismiss. On October 12, 1949, when the matter came on for hearing before the referee, the original Ordinance 17-B was offered in evidence and the parties stipulated that the document presented was the original Ordinance 17-B and was in terms the same as the copy attached to the motion to dismiss. The ordinance was admitted in evidence over the objection of the proponent. It was then stipulated and agreed that the charter of the city of Sand Springs does not cover initiative and referendum proceedings, and that the state law relating to reference in this matter is controlling. Thereupon the matter was presented to the referee on the motion to dismiss the appeal and on the merits of the appeal. So far as the record shows there was no evidence introduced tending to prove the insufficiency of the referendum petition nor tending to prove that any of the signatures to the same were not qualified electors of said city of Sand Springs.

The referee found as a fact that the board of commissioners of the city of Sand Springs passed and adopted Ordinance 17-B, and that the purpose thereof was to repeal Ordinance 6-B.

The conclusions of law by the referee are: That there was filed in the office of the proper officer of the city of Sand Springs a duly authorized referendum petition containing the signatures of more than 25 per cent of the qualified electors of the city of Sand Springs: that the filing of the protest by F. F.

Ashby on the 23rd day of September, 1946, was within time; that the appeal from the ruling of the city clerk was duly filed and conferred jurisdiction upon the Supreme Court to determine the issues involved; that there is no evidence to contest the fact that the 476 signatures to the referendum petition are those of qualified electors residing within the corporate limits of the city of Sand Springs; that the referendum petition filed on the 11th day of September, 1946, was sufficient in all respects and suspended the operation and the effect of Ordinance 6-B as passed and approved by a two-thirds majority of the board of commissioners of the city of Sand Springs on August 13, 1946; that said Ordinance 6-B was by said process suspended and is now suspended from operation.

The referee further concluded that the motion to dismiss the appeal should be denied for the reason that the board of commissioners was without authority in fact and in law to repeal Ordinance 6-B for the reason that the filing of the referendum petition on September 11, 1946, suspended the operation of Ordinance 6-B, and precluded the right of legislative action thereon until a final determination of the question by a vote of the people on the referendum petition.

The referee further concluded, as a matter of law, that the referendum petition submitted in this case is sufficient in all respects and should be so declared by this court.

There was some question raised as to the right of the city of Sand Springs to appear as one of the parties to the motion to dismiss the appeal. The referee concludes that it is unnecessary to determine the question of the right of the city due to other findings and conclusions made in the proceedings.

The questions involved have been extensively briefed. There is no serious contention that the findings of fact by the referee are incorrect. The principal questions are questions of law.

It is first contended by the proponent that the protest filed by F. F. Ashby, attacking the referendum petition, was not filed within the time allowed by law and is, therefore, of no legal effect.

Ordinance 6-B, without an emergency clause, was adopted by the board of commissioners of the city of Sand Springs on August 23, 1946. A copy of the proposed referendum petition was filed August 27, 1946. Notice of the filing of the copy of the referendum petition was published by the city clerk on September 5, 1946. The original referendum petition bearing the 476 signatures was filed September 11, 1946. No notice of the filing of the original petition was ever published.

The protest of Ashby was filed September 23, 1946, twelve days after the referendum petition was filed.

The petition of protestant appears to be that the statute calls for the filing of a protest within ten days after the original referendum petition is filed.

It is conceded that the charter of the city of Sand Springs makes no provisions relative to initiative and referendum proceedings and that the matters, therefore, are governed by the state law. The statute relied upon and cited by proponent is 34 O.S. 1941 §8, which, with reference to the time of filing a protest against a referendum petition, provides:

"When such original petition is filed in said office (here the city clerk) it shall be the duty of the Secretary of State (here the city clerk) to forthwith cause to be published in at least one newspaper of general circulation within the State, (here the city of Sand Springs) a notice setting forth the date of such filing. Any citizen of the State (here the city of Sand Springs) may, within ten days, by written notice to the Secretary of State, (here the city clerk) and to the party or parties, who filed such petition, protest against the same. . . ."

The record shows, and the referee found, that the city clerk published the

notice setting forth the date of the filing of the copy of the referendum petition, but that no notice of the filing of the original petition purporting to bear the signatures of the requisite number of qualified electors was published by the city clerk.

The law requires that any protest against an original petition must be by written notice to the city clerk and the party or parties who filed such petition and such protest must be within ten days. That means ten days after publication by the city clerk of the notice setting forth the date of the filing of the original petition, and not ten days after the filing of the original petition. In re Initiative Petition No. 4, for Repeal of Charter of City of Cushing, Cattron et al. v. Hough et al., 165 Okla. 8, 23 P. 2d 677. In this case no such notice was published. The city clerk appears to have certified that there were no available funds with which to pay for such publication.

The question is whether protestant F. F. Ashby was required to wait until such notice was published before filing his protest. Notwithstanding his failure to publish the notice, the city clerk heard and considered Ashby's protest and, in fact, sustained the same. His findings were that the petition contained 476 names subscribed thereto; that of the 476 signatures only 212 were signatures of qualified legal voters and the total number of votes cast at the last election held in the city of Sand Springs was 1,018, and, therefore, the 212 signatures of qualified legal voters were short 43 of the required 25 per cent. Apparently the city clerk could find available funds to pay for the publication of the notice of filing of the copy of the referendum petition, which the law did not require him to publish, but could not find available funds with which to pay for the publication of the notice which the law made it his duty to publish.

Under the circumstances, protestant Ashby was not required to wait until after publication of such notice. He could and did waive published notice and the city clerk waived any question of premature filing of the protest when he heard and considered the same and held the referendum petition insufficient which, of course, in effect sustained Ashby's protest. The conclusion of the referee that the protest was filed within time should be and is approved.

There is no question as to the regularity of the appeal to this court and the conclusion of the referee with respect thereto is approved.

This brings us to the consideration of the motion to dismiss the appeal. Pending the appeal herein the board of commissioners of the city of Sand Springs, on August 9, 1949, passed and approved Ordinance 17-B which had for its purpose the rescinding or repeal of Ordinance 6-B, the same being the ordinance against which the referendum petition herein involved is directed. Ordinance 17-B was introduced in evidence. Said ordinance, after reciting the passage of 6-B and its various provisions, reciting the filing of said referendum petition and its purported effect, and reciting that the board of commissioners of Sand Springs disagreed in part with the terms and conditions of said Ordinance 6-B, and agree with the signers of the referendum petition, Ordinance 17-B provides:

"Now Therefore, Be It Ordained By the Board of Commissioners of the City of Sand Springs, Oklahoma:

"Section 1, That the action of the Board of Commissioners of the City of Sand Springs, Oklahoma, on the 13th day of August, 1946, in passing and approving ordinance No. 6B, said ordinance being more particularly described above, be and the same is hereby rescinded, and the said ordinance No. 6B be, and the same, hereby, is repealed.

"Section 2: Emergency: That an emergency is hereby declared to exist for the preservation of the public peace, health and safety by reason whereof, this ordinance shall take effect from

and after its passage, approval and publication.

"Passed: and approved and the emergency clause ruled upon separately and approved this 9th day of August, 1949.

"Rubye F. DeBolt
"Commissioner of Public Affairs and Safety, Ex-Officio Mayor"

If the board of commissioners of the city of Sand Springs had the power to rescind or repeal Ordinance 6-B while the matter of its approval or rejection was pending under the referendum provisions of the Constitution and statutes, then the question of the sufficiency of the referendum petition has become and is moot for the reason that the ordinance against which it was directed has been repealed and there is no occasion for an election. The exact question has never been before this court, but somewhat similar questions have been. If we are to literally follow what we have said in Granger et al. v. City of Tulsa et al., 174 Okla. 565, 51 P. 2d 567, we might be justified in saying that the board of commissioners of Sand Springs did have the power to repeal Ordinance 6-B at any time, even while its adoption or rejection was pending under the referendum provisions of the Constitution and statutes. In Granger et al. v. City of Tulsa et al., supra, it is said:

"We therefore hold that laws proposed and enacted by the people of Tulsa under the initiative provisions of the Constitution and the charter of the city of Tulsa are subject to the same constitutional limitations as are other statutes, and may be amended or repealed by the legislative body of the city at will."

But there we had before us for consideration a different state of facts. The question there presented was the power of the city to amend or repeal an ordinance which has been adopted under the initiative provisions of the Constitution and the charter of the city of Tulsa. In other words, it was an ordinance which had been initiated by the people and had been voted upon and adopted by the vote of the electors of the city. The question there under consideration did not involve the question of whether the legislative body of a municipal corporation may repeal or amend an ordinance which has been adopted by it and the question of its final adoption or rejection is pending under the referendum provisions of the Constitution and statutes.

In State ex rel. Drain v. Becker, Secretary of State, (Mo.) 240 S.W. 229, it was held:

"The right of the Legislature to amend or repeal any act whether it had its origin in the General Assembly or in direct legislation is confined, with reference to measures initiated or referred, to those which have been enacted into legislation by the vote of the people, and not to those which are in the process of enactment."

The question was thoroughly discussed in the majority opinion by Mr. Justice Walker, the special concurring opinion, and the dissenting opinion by Mr. Justice David E. Blair. There is little to be said on either side of the question that has not already been said in that case. The opinion of the court defines referendum as follows:

"A referendum may be defined to be a reservation by the people of the right to have submitted to them for their approval or rejection any laws passed by the Legslature, except those necessary for the immediate preservation of the public peace, health, or safety, appropriations for the current expenses of the state government, the maintenance of state institutions, and the support of public schools. . . ."

The court then said:

"The meaning of the referendum having been ascertained, what was the purpose of its adoption? Primarily, to restrict or subject to more immediate control the lawmaking power. . . ."

This may be more fully stated as primarily to restrict or subject to more immediate control of the people, the lawmaking power. In effect, it gives

to the people the right, upon a petition by a specific number of qualified electors, to withdraw from the Legislature the power to finally enact legislation in certain instances. Thereunder when the legislative body has proposed and adopted certain legislation not declared to be necessary for the immediate preservation of the public peace, health, or safety, and not making appropriations for the maintenance of state institutions, and not pertaining to the support of public schools, the people, upon a petition signed by the requisite number of electors, have the right to take away from the Legislature the ultimate right to determine whether such legislation shall be adopted and to decide for themselves by their vote whether such proposed legislation should be adopted or rejected.

The court, in State, ex rel. Drain v. Becker, etc., supra, stated:

"The meaning and purpose of the constitutional provision under review having been defined, to what extent was it intended to be applied? It is not reasonable to conclude, in the absence of words of limitation, that the power thus reserved was intended to be other than complete. Held to be otherwise, it would fail to effect the purpose of its creation, which, as we have shown, was to lessen the limits of legislative power as theretofore possessed by the General Assembly. Of what avail would a reservation be which could be rendered futile by the act of the body from which the power has been withdrawn? To place the seal of judicial approval upon such legislative action would, in effect, render the constitutional provision concerning the initiative and referendum nugatory and, as a consequence, its adoption a vain and foolish thing. Reasons upon which the rules of construction are based offer no support to such a conclusion."

There it is pointed out that the contention made (as it is in the instant case) is that the right of a reference reserved to the people may be forestalled or nullified by legislative action before the referred measure is voted upon. With reference thereto the court stated:

"This contention is based upon the assumption that, despite the complete right of reference, there still remains in the General Assembly in some undefined form a residue of power which may be asserted in this manner. This is a mistake. The powers of the General Assembly are in no wise limited by the constitutional provision until the right of referendum has been invoked; thereafter it is divested of all power in regard to the matter referred until the action of the people has been exercised by a vote upon same. This, for the reason, which seems patent from the nature and purpose of the proceeding, that the Constitution does not contemplate that the General Assembly shall interfere with legislative action by the people themselves or that the latter may interfere with like action by the General Assembly until such action in each instance has been consummated. To illustrate: The people cannot refer a measure until it has been adopted by the General Assembly and signed by the Governor, and only lacks the required efflux of time to become a law. On the other hand, the General Assembly, after the right of reference has been invoked, cannot interfere with a referred measure by the passage of another on the same subject until after the one referred has been voted upon by the people and their power in that respect exhausted."

And further:

"The absolute power in regard to the exercise of the rights conferred by this constitutional provision is further attested in its declaring referred measures to be free from the executive vote (sic) and in rendering them operative immediately upon their approval by the majority of the voters."

There, as here, precedents were cited to give color of authority to actions of the legislative assembly in the adoption of a measure of like tenor and application to the one referred where the latter was in process of reference. But it is further pointed out that the precedents cited were limited

to the amendment or repeal of initiated or referred acts after their adoption or rejection, such as the case here, particularly in Granger v. City of Tulsa, supra.

Ex parte Haley, 202 Okla. 101, 210 P. 2d 653, presents a somewhat similar situation. It deals with the power of the Legislature to enact legislation which has once been rejected under referendum proceedings. Incidentally, it commits this court to the rule that where there has been a vote of the people upon a referred measure, such measure stands rejected, although the election at which it was voted upon is invalid and notwithstanding the fact that a majority of the voters voting at such invalid election was in favor of the adoption of the measure. Therein this court quoted with approval and adopted as sound the rule announced by the Criminal Court of Appeals, in J. D. Leach v. State, 17 Okla. Cr. 322, 188 P. 118. Included in the rule stated in that case is the following:

" 'The provisions of section 3 of article 5 of the Constitution of this state, heretofore quoted, with reference to holding elections on referred measures, in our opinion form the basis for determining the period of time in which the Legislature is without authority to repeal or re-enact a measure regularly before the people for approval or rejection, which period is necessarily from the date of filing a valid petition for reference to the date the referendum vote is had. . . .' "

It would be difficult to state in language more clear that under the provisions of section 3, article 5 of the Constitution there is a period during which the Legislature is without authority to repeal or re-enact a measure regularly before the people for approval or rejection; that such period begins with the date of filing a valid petition for reference and ends with the date the referendum vote is had.

In re Opinion of the Justices, 174 A. 853, the Supreme Court of Maine had before it the identical question arising under a similar constitutional provision. The opinion of the justices said:

"After the referendum has been invoked and until the voters have acted thereunder, the subject-matter of the referred bill is withdrawn from further consideration of the Legislature. It can neither amend nor repeal the act during that period."

In Jackson v. Denver Producing & Refining Co. et al., 96 F. 2d 457, the Circuit Court of Appeals, Tenth Circuit, had before it for consideration the question of the power of the legislative body of the city of Oklahoma City to re-adopt an ordinance and add thereto an emergency clause after a referendum petition had been filed against the original ordinance and before a vote had been had on said referendum petition. Therein the court held:

"Under the provisions of the Oklahoma Constitution and statutes relating to referendum on municipal ordinances, an ordinance passed by the council of the city of Oklahoma City purporting to enact substance of former ordinance on which referendum petition had been filed and before time of election at which question was to be submitted to voters, and containing general repealing clause, was without force, since council was without jurisdiction to pass ordinance at such time."

Therein the court said:

"In this instance, the council essayed to pass the subsequent ordinance after the petition for referendum had been filed and before the time of the election at which the question was to be submitted to the voters. The council was clearly without jurisdiction to pass it at that time, and it has no force."

From the above authorities it is clear that the board of commissioners of the city of Sand Springs was without power or jurisdiction to alter, amend or repeal Ordinance 6-B after a valid petition for referendum with respect thereto had been filed and before an election had been held thereon.

There was, as found and concluded by the referee, no evidence to contest or refute the fact that the 476 signatures to the original referendum petition are the signatures of qualified electors, residing within the corporate limits of Sand Springs, and the stipulation shows that the 476 signatures constituted more than 25 per cent of the total number of qualified electors residing within the city of Sand Springs.

There is no contention that the referendum petition is in any way deficient as to form. It follows that the conclusion of the referee that the referendum petition was sufficient in all respects is correct and should be and is adopted.

The motion to dismiss the appeal must be and is hereby denied.

The findings and conclusions of the referee are in all respects approved and adopted.

We hold that the referendum petition filed with the city clerk of Sand Springs is sufficient in form and contains the signatures of more than 25 per cent of the number of votes cast at the election held in said city next· before the date of the filing of said referendum petition, and that Ordinance 6-B has not been effectively repealed.

DAVISON, C.J., and CORN, GIBSON, LUTTRELL, and JOHNSON, JJ., concur. ARNOLD, V.C.J., and WELCH and HALLEY, JJ., dissent.

ARNOLD, V.C.J., and WELCH and HALLEY, JJ. (dissenting). We dissent to the majority opinion and to this disposition of the matter as being futile and useless as well as providing for, if not requiring, a vain and worthless thing, all at public expense and therefore constituting a waste of public funds of the state, and of the city of Sand Springs.

We respect the right of the majority to their view, but to us the record demonstrates there is no good reason for the promulgating of this majority opinion, or for the holding of a referendum election in Sand Springs, all with the attending expenditures of money necessarily entailed.

As supporting our dissenting view we point out the following details: The purpose of this referendum petition was to presently suspend, and to ultimately repeal, veto or invalidate city ordinance 6B providing for parking meters in the city of Sand Springs. The power reserved and to be exercised by the people in the *referendum* is the *veto* power, and nothing else. It is so stated in the law. 34 O.S. 1941 §1. When voting on the question whether to exercise the *veto* power, no law can be thereby enacted or re-enacted, no repealed law can be re-activated. If, pending consideration by this *veto* power, the legislation is fully repealed and nothing other or further is adopted, there exists nothing for the people to *veto* in referendum.

From the filing of this referendum petition in August or September, 1946, the ordinance was treated as suspended and wholly inoperative. Though the city clerk found the referendum petition to be insufficient and an appeal was purportedly lodged in this court, no one appeared to prosecute the appeal or proceed with a hearing until late in 1949. This inaction possibly resulted from the fact that ordinance 6B remained in a state of dormancy, or of suspended animation, with no effort to enforce it and perhaps no desire to do so.

At any rate, an appearance was finally made in behalf of the proponents of the referendum petition and same was set .for a hearing before the referee. Thereupon it appeared and was observed that in August, 1949, the then board of commissioners of the city, evidently recognizing the public sentiment, had fully repealed ordinance 6B which had theretofore been the subject. of this referendum petition. And a mo-

tion to dismiss the purported appeal to this court was filed.

The referee was without authority to pass upon the motion and to order the dismissal, and he sought to proceed with the hearing of evidence as his assignment directed. But the city knew the objectionable ordinance had already been repealed, and of course lost interest in the referendum petition which the city clerk had found to be insufficient on his hearing of both sides of the matter. There was no reason to go to the expense of presenting evidence against the sufficiency of the petition. No such evidence was presented and there was nothing for the referee to do but find the petition was sufficient numerically, so far as that was concerned. This he did and submitted to the court the motion to dismiss, and his fact finding, all for proper action by the court.

We ought to dismiss the appeal. Perhaps it should have been dismissed as abandoned when the appellants and proponents let it lie dormant through nearly three years without appearance or prosecution in any manner. But we ought to dismiss it now because the thing it attacks, Ordinance 6B, is long since repealed, extinct, and is no more.

There was reason in the abandonment of protest proof after the motion to dismiss had pointed out the repealing ordinance of August, 1949. Those representing the city could find no further interest in the referendum petition. They knew that if an election should be held on the petition, whether the petition was legally sufficient or not, if the people should vote to repeal or veto Ordinance 6B, it would be no better repealed or invalidated than it was in August, 1949. They also knew if the people should vote against repealing 6B, that ordinance would not thereby be re-enacted. It could not be possible to convert this referendum proceeding into a proceeding for the initiation of a law. Too many requirements

for the initiating of a measure to be adopted by the people are wholly absent from a proceeding in referendum.

However, the majority have decided the motion to dismiss should be denied, the opinion should be promulgated and published, the Sand Springs City election perhaps must be held, etc. But no good can be done by it. Nothing can be accomplished. Could the voters re-enact this repealed ordinance by voting at this election not to repeal or to veto it? Surely the majority do not so hold. They have not said so. Could the voters at this election repeal Ordinance 6B already repealed since August, 1949? If they did, what would be accomplished thereby? The answer is nothing, and so we dissent.

We will say, however, the proceeding should be dismissed. The result then would be that the objectionable ordinance would remain repealed, much needless expense would be saved, the people would be spared the confusion at voting in such a useless election, after all they set out to accomplish by the election has already effectively come to pass. No explainable reason whatever can be given for voting in such election, no reason why a citizen should vote one way or the other, no reason why he should vote at all.

We observe the authorities holding that, pending referendum, those in authority may not repeal the ordinance and re-enact the law, thereby circumventing and defeating the referendum right. But no case is cited holding they cannot repeal outright. That does not defeat referendum. That grants everything sought by the referendum, and that too without the delay or expense of a referendum election.

For that matter, we do not yet know whether the referendum petition here is legally sufficient or not, and we never will know. Upon trial the city clerk found it was not. Here, for lack of contrary proof, the referee assumed it was sufficient and so held. Apparently the

majority opinion finds likewise, though still without proof. However, that really makes no difference here, for whether we have an election on a deficient petition, or an election on no petition at all, or no election at all, the result will be identical as to old Ordinance 6B now expressly repealed for nearly a year. Once it was an odious law, at least to those who attacked it by referendum petition, and it never was vigorously defended by anyone. Now for a year it has been wholly extinct. Why belabor it further with a so-called referendum election.

We dissent.