**OKLAHOMA TAX COMMISSION, Appellant,**

v.

**Robert B. SMITH, Appellee.**

**No. 55079.**

Supreme Court of Oklahoma.

May 5, 1980.

Marjorie Patmon, Gen. Counsel, David Hudson, Sp. Counsel, Bryce A. Baggett, Sp. Counsel, Oklahoma City, for appellant.

Bloodworth, Smith & Biscone by Robert B. Smith, Oklahoma City, for appellee.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, Richard F. Berger, Asst. Atty. Gen., for Attorney General.

HARGRAVE, Justice.

This appeal to the Oklahoma Supreme Court is brought by the Oklahoma Tax Commission from a summary judgment in favor of the plaintiff, Robert B. Smith. The order and judgment of the Oklahoma County District Court holds in substance that portions of the Oklahoma income tax

laws are null and void. That judgment is based upon Federal Constitutional grounds as well as State Constitutional underpinnings which are: Equal protection of law under the 14th Amendment to the Federal Constitution and the Oklahoma Constitution; reservation to the people of the State of Oklahoma of the rights of the initiative and referendum. The judgment holds 68 O.S.1979 Supp. § 2355 A invalid on the basis of the equal protection grounds offered, and holds the Legislature had no authority to enact the aforesaid § A after Initiative Petition 309, being State Question 539, had been filed with the Secretary of State but before its submission to the voters of the state because both the State Question and House Bill 1484 of the Thirty-Seventh Legislature dealt with the subject of income taxation.

In the trial court stipulations were entered into pertaining to Initiative Petition No. 309 and the Constitutional underpinnings of such a petition, powers and duties of the Tax Commission, and the passage of the 37th Legislature's House Bill 1484. Those stipulations provide a framework for the subsequent judgment of the District Court, and in turn, this appeal. Article V, Section 1 of the Constitution of the State of Oklahoma reserves unto the people of the State of Oklahoma the power

.   .   .   to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.

The manner of exercise of this power is delineated in § 2 of that same article. The power of initiative is spoken to first in Section 2:

The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition,   .   .   .

The second power defined in Article V § 2 is that of referendum which is historically linked to that of initiative but serves the related but distinct objective of allowing the people to pass upon subjects of legislation approved by the Legislature apart from the preceding provision's reservation of the power to induce legislation. The referendum is described thusly:

.   .   .   The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted.

.   .   .

As stipulated, there exist certain Constitutional restraints upon the powers of initiative and referendum in § 7 of the same Article, being Article V § 7 of the Oklahoma Constitution:

§ 7.   Powers of legislature not affected.

The reservation of the powers of the initiative and referendum in this article shall not deprive the Legislature of the right to repeal any law, propose or pass any measure, which may be consistent with the Constitution of the State and the Constitution of the United States.

The stipulations entered into reduce those portions of Initiative Petition 309, involved in this appeal, to two proposals fixing the rate of taxation on taxable income to a ceiling of 6% and at the same time providing for a full deduction for federal tax paid to arrive at the taxable income figure. The disapproval of this initiative measure by the voters is included in the stipulations. Additionally, it was stipulated that HB 1484 of the 37th Legislature was passed prior to the vote on the state question, and the provisions of that bill include different rates of taxation of adjusted gross income dependent upon whether the taxpayer elects to deduct from his gross income figure the tax paid to the federal government.

Both parties to the litigation moved for summary judgment in the trial court. In its trial brief in support of the motion for summary judgment the Oklahoma Tax Commission alleged the absence of a case or

controversy sufficient for the invocation of the Oklahoma Declaratory Judgment Act, 12 O.S.1971, § 1651, and additionally argued that the failure of the State Question rendered the controversy as joined moot. The Commission's second point was that the Legislature is empowered by the State Constitution to levy an annual tax sufficient to defray state expenses; that Oklahoma income taxes have been uniformly upheld as Constitutional, and that deductions from taxable income are purely a matter of grace dependent upon the Legislative will alone. Plaintiff taxpayer responded to this motion alleging the proceeding was properly brought as a declaratory judgment action under the authority of *State ex rel. Board of Examiners in Optometry v. Lawton*, 523 P.2d 1064 (Okl.1974). The taxpayer's second response stated that under *Coalgate v. Harvey*, 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299 (1935), the classification of taxpayers on different tax rates, depending upon whether or not they deduct federal taxes paid, breached the principle that the classification must be reasonable, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced will be treated alike.

The plaintiff taxpayer moved for summary judgment in his favor and was ultimately successful in the trial court. In his trial brief on the motion the plaintiff presented an argument referable to the surtax levied by the provisions of House Bill 1484 found at 68 O.S.1979 Supp. § 2355 A. This provision admittedly was operative only if State Question 539 (Initiative Petition No. 309) passed, and the stipulated facts negate such conclusion. Secondly, plaintiff taxpayer asserted those provisions of HB 1484 now in effect are unconstitutional under the State and Federal Constitutions in that it provides a disparate method of computing tax without a rational basis for the unequal treatment imposed. The disparity is a maximum tax rate of either 6% or 17% of taxable income, and the choice of classification was made to depend upon the taxpayer's decision to deduct or not to deduct federal taxes before arriving at taxable gross income. The authority cited as demonstrating a violation of equal protection is *Coalgate v. Harvey, supra*, with similar argument appended. The Tax Commission responded to this request for summary judgment and set out in its brief the above quoted Oklahoma Constitutional provisions in addition to Article X § 2 and Article X § 12, as amended 1968, then submitted plaintiff's exclusive and adequate remedy at law was to pay the tax and challenge the constitutionality of the statute. The Commission sought to establish a distinction between the case at bar and *In re Referendum Petition # 1*, 203 Okl. 298, 220 P.2d 454 (1950), pointing to the distinction between a referendum against an enacted measure and the initiative approach to enacting positive legislation, submitting thereby that the proper analysis of this action required the authority of the case of *Granger et al. v. City of Tulsa et al*, 174 Okl. 565, 51 P.2d 567 (1935). The Commission's response to the equal protection argument submitted that the taxpayer is the classifying party, not the State, and that the requirements of a rational classification with a reasonable relation to the object to be achieved were met. Lastly, there was argued no authority to establish a taxpayer's "right" to any deduction save Legislative grace. The Commission proposed that the classification of taxpayers utilizing the federal deduction and those that do not into two different percentage schedules rationally attempted to attain the ultimate end of final taxation at near the same rate regardless of the alternative chosen.

The trial court made a journal entry of judgment setting forth findings of fact and conclusions of law. In those findings of fact, the Court determined plaintiff is a taxpayer and has standing to contest "the propriety of tax laws within the State . . . ."; that House Bill 1484, codified at 68 O.S.1979 Supp. § 2352, *et seq.*, would affect plaintiff, and he could reasonably expect enforcement against him. The trial court also found § 2358.B.8.a., *supra*, to provide alternative rates of taxation "depending upon whether or not the taxpayer

elects to avail himself of a deduction for federal taxes paid," and that the amount of tax owed by an individual could vary depending upon the taxpayer's selection of schedules. Additionally, the trial court's findings state that House Bill 1484 was enacted after Initiative Petition 309 was completed and before that proposition was voted upon; that said petition provided a maximum income tax rate of 6%, and a deduction of all federal income tax paid in computing Oklahoma taxable income, but that the initiative petition failed to pass a vote of the people.

In his conclusions of law drawn from the above facts, the trial court held a portion of House Bill 1484, being 68 O.S.1979 Supp. 2355 A. to be void for the reason that it violated plaintiff's "equal protection rights under the 14th Amendment to the Constitution of the United States in that the same creates an invidious classification of taxpayers; namely, those who use the federal tax deduction and those who do not." The court held the classification to be invidious because it was not created for a rational or compelling reason and was indeed unreasonable and illogical because: . . . "in certain circumstances one's tax liability is increased by electing to avail oneself of a legal deduction." The trial authority additionally held that procedure violative of the "graduated income tax" authorized in Art. X, Sec. 12 of the Oklahoma Constitution.

The judgment also declared § 2355.A of the above title void because the Oklahoma Legislature was without authority to entertain the subject matter of the act, percentage rate of income taxation, while Initiative Petition 309 was pending before the people, under the principles laid down in *Granger v. City of Tulsa,* 174 Okl. 565, 51 P.2d 567, *and In re Referendum Petition # 1,* 203 Okl. 298, 220 P.2d 454.

Lastly, the court held the remainder of H.B. 1484 in full force and effect by reason of the severability proviso, Section 10 of the Bill.

The effect of these conclusions of law is that the legislatively-constructed tax rate at which citizens must pay income tax when they deduct federal income tax from income was wiped out—declared void, while the deduction enacted in the same bill remains viable, thus giving high income taxpayers the benefits of both the superseded flat percentage rate (6%) taxation and the deduction for federal taxes made in the later enactment of H.B. 1484.

The court, upon granting plaintiff summary judgment, declared 68 O.S.1979 Supp. § 2358.A and § 2355.1 void, restrained the Tax Commission from prohibiting plaintiff to avail himself of the federal tax deduction in § 2358.B.8.a *supra,* and restrained the Tax Commission from collecting taxes under those void provisions.

The trial court issued judgment on April 7, 1980, and the Oklahoma Tax Commission filed its petition in error on the 9th of that month. The trial authority has stayed the effectiveness of his order pending appeal, and this Court has expedited the appeal pursuant to motion by appellant. The Supreme Court's order advancing this cause for adjudication provided a 14-day total briefing cycle and deadline for submission of the record on appeal, and notified the parties there would be no extensions granted from the above schedule, and the cause would stand submitted on April 23, 1980. Due to the greatly accelerated appeal required by the latter order necessitated by the exigencies of time, we are deciding this appeal strictly on the issues presented by the parties, expressing no other opinion, by silence or acquiescence, on remaining aspects of the proceeding at the bar.

The Attorney General appeared at the oral argument had in this cause and filed a brief containing a jurisdictional objection to the maintenance of this action. His argument briefly is that 68 O.S.1979 Supp. § 226 enacted in 1978 provides the taxpayer appellant with his exclusive remedy and therein it is provided that remedy requires payment of the tax under protest as condition precedent to maintenance of the action. However, we note that this Court, in speaking to § 12665 O.S.1931, repealed by Oklahoma Session Laws 1941 p. 333 § 64, has foreshadowed our conclusion here in the

case of *Antrim Lumber Co. v. Sneed,* 175 Okl. 47, 52 P.2d 1040 (1935). Therein we held in the fourth Court syllabus that the statute, providing for payment of tax under protest and bringing of an action for recovery thereof when relief by appeal was not otherwise provided was not restricted to ad valorem taxes, but was applicable to all taxes of a general revenue nature. The attack on the corporate license tax was made in *Antrim* on constitutional grounds although the Court did not reach the constitutional issues there raised. The Court held the remedy provided in § 12665 O.S.1931 for recovery of illegal taxes paid provided the taxpayer with an adequate, speedy and exclusive remedy. The Court determined failure to follow the statutory procedure precluded recovery sought on the basis of involuntary payment and compulsion to pay a void tax. The Court did note a point material to the cause at hand in the ultimate paragraph of the opinion. Although the statutory remedy was held exclusive, the rule may be otherwise:

> . . . [W]here the act by which the officer presumes to act is unconstitutional and void and the tax has not been paid. Ofttimes the taxpayer is entitled to equitable relief where by coercion the relief at law is inadequate. In such cases, . . . a court of equity . . . will not do justice by halves. 175 Okl. at 51, 52 P.2d at 1045.

The above suggestion that there exists a material distinction in instances where the statute is unconstitutional is borne out in the law of other jurisdictions, for example, see *Lewis v. City of Lockport,* 276 N.Y. 336, 12 N.E.2d 431 at p. 434 (Ct.App.N.Y.1938), citing from *New York Rapid Transit Corp. v. City of New York,* 275 N.Y. 258, 9 N.E.2d 858 (1937), for the proposition that a provision in a tax statute establishing the procedure for recovering taxes illegally collected is not normally intended to apply where a claim is made that the statute is entirely unconstitutional as applied to the taxpayer. We determine in the situation such as is present here, the relief at law. is inadequate. We have held heretofore that one adversely affected by a statute which he contends is invalid on its face need not violate the law in order to obtain a declaration as to its validity or invalidity. *State Bd. of Examiners in Optometry v. Lawton,* 523 P.2d 1064 (Okl.1974). During the course of the oral argument entertained in this proceeding, the authority of *State Bd. of Examiners* was said to be distinguishable from the cause at bar inasmuch as the statute attacked imposed criminal penalties for its violation. We reject this distinction. The penal statute there examined was attacked on constitutional grounds as violative of the due process clause of the Fourteenth Amendment to the Federal Constitution. The statute questioned here, HB 1484, is attacked on the basis of the same amendment under the equal protection clause. In this instance, the similarity of the cases is demonstrated by a quotation from *State Bd. of Examiners* at p. 1066:

> . . . one adversely affected by a law which he contends is invalid on its face need not violate that law in order to obtain a declaration of its validity or invalidity.

The remedy in District Court afforded by 68 O.S.Supp.1979 § 226 is therefore not exclusive, as argued by the Attorney General. Our inquiry progresses to the Attorney General's next contention which is in substance that if the above statutory remedy is not exclusive, the action is still not properly brought under 12 O.S.1971 § 1651, *et seq.* as a declaratory judgment proceeding. In support of that contention, he cites 12 O.S. 1971 § 1657, providing:

> This act shall not be applicable to orders, judgments, or decrees made by the State Industrial Court, the Corporation Commission, or any other administrative agency, board or commission of the State of Oklahoma.

But the Attorney General concedes this action was not brought to test an order, judgment or decree of the Tax Commission inasmuch as the action was filed prior to an enforcement order, arguing the taxpayer may not accomplish indirectly what he cannot accomplish directly. We reject the applicability of this statement to the action

here brought because the taxpayer plaintiff's claim is based upon his ability to attack a statute allegedly void on constitutional grounds prior to the issuance of an order, judgment or decree by the commission, and at the time of filing the action herein no tax was due. Therefore, no adequate remedy was available under Section 226 above.

The Attorney General challenges the jurisdictional basis of this action as brought under the declaratory judgment act, 12 O.S. 1971 § 1651, *et seq.*, in that § 1653 provides:

. . . if a statute or regulation is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard.

The Attorney General argues the word "shall" necessitates the conclusion he must be served as a party to the action, and that lack of proof of such service in the judgment roll taints this proceeding as void for lack of jurisdiction over the subject matter. Such a conclusion assumes there is no underlying reason for the use of the phrase "served with a copy of the proceeding," and the usually appearing Oklahoma terminology "served with notice of process and a copy of the petition," and that the appearance of the word "served" in § 1653 elevates the Attorney General to the position of an indispensable party whose actual or constructive presence is required before the action may proceed. We decline to so hold. The provision in question is derived from a uniform act now enacted with or without modification in 39 states, the Virgin Islands and Puerto Rico. The questioned portion of 12 O.S.1971 § 1653 derives from § 11 of the Uniform Declaratory Judgment Act. Iowa has omitted this section of the act, and of the remainder of the jurisdictions, the authority is divided upon the point of whether service on the State Attorney General is jurisdictional. Our examination discloses in the following 11 States remarks indicating jurisdictional infirmity of some type results from failure to serve the Attorney General: No authority to declare statute unconstitutional. *Sendak v. Debro,* 264 Ind. 323, 343 N.E.2d 779 (1976). Not a party, court cannot acquire jurisdiction of such a case unless AG is served. *Hydraulic Press Brick Co. v. City of Independence,* 38 Ohio App.2d 37, 311 N.E.2d 873 (1974). Failure to serve AG requires dismissal of appeal. *Bollhoffer v. Wolke,* 66 Wis.2d 141, 223 N.W.2d 902, (1974). Where AG not made a party nor served with notice, court is without jurisdiction. *Cummings v. Shipp,* 156 Tenn. 595, 3 S.W.2d 1062 (1928). Action could not be maintained where Attorney General not served. *Givner v. Cohen,* 208 Md. 23, 116 A.2d 357 (1955). In absence of service bill would be dismissed. *La Fleur ex rel. Anderson v. Frost,* 146 Me. 270, 80 A.2d 407 (1951). Notice to AG a condition precedent to entry of decree. *Court Street Parking Co. v. City of Boston,* 336 Mass. 224, 143 N.E.2d 683 (1957), Appeal dismissed, 355 U.S. 272, 78 S.Ct. 331, 2 L.Ed.2d 257. Failure to serve AG requires vacation. *Lakewood Pawnbrokers, Inc. v. City of Lakewood,* 182 Colo. 315, 512 P.2d 1241 (1973). Service on AG is jurisdictional. *Watson v. Washington Preferred Life Ins. Co.,* 81 Wash.2d 403, 502 P.2d 1016 (1972). In absence of service on AG court is without jurisdiction to render any judgment except dismissal. *Plantation Pipe Line Co. v. City of Bremen,* 225 Ga. 607, 170 S.E.2d 398 (1969). Failure to serve AG goes to the jurisdiction of the court. *Smith v. City of Florence,* 288 Ala. 61, 256 So.2d 893 (1971). Other cases suggest failure to serve the Attorney General is not such a defect as will taint the action with a defect of jurisdiction. A representative sample is included: Not such a defect as was fatal in view of joinder of county clerks, and fact AG and Governor were "cognizant" of action. *Mauk v. Hoffman,* 87 N.J.Super. 276, 209 A.2d 150 (1965). Act does not make AG a party nor require service under Civil Practice Act. *Pharris v. City of Jefferson,* 226 Ga. 489, 175 S.E.2d 845 (1970). Where AG not served, but advised of proceeding and did not complain section was substantially complied with. *Wichita County v. Robinson,* 155 Tex. 1, 276 S.W.2d 509 (1955). Where AG had been apprised of contents of complaint though not served, spirit of stat-

ute was satisfied although better practice would have been to serve as provided by law. *Mayo v. National Truck Brokers, Inc.*, 220 So.2d 11 (Fla.1969).

■ Our analysis centers upon the conclusion that in instances where the litigants are all private parties, the Attorney General must be served with a copy of the proceedings. He need not appear as he is not an indispensable party to the action. However, the instant proceeding rests on a different factual context because here the State of Oklahoma was actually a party to the litigation. 74 O.S.1979 Supp. 18b contains a proviso stating that nothing within that act requires the Attorney General to represent the Tax Commission in any court proceeding for or on behalf of the Tax Commission. In addition, 68 O.S.1978 Supp. 226(c) which we have heretofore held not an exclusive remedy here, states in all actions brought "hereunder" service of process upon the Chairman of the Tax Commission shall be sufficient service and the Tax Commission shall be the sole necessary and proper party defendant in any such suit. We evince a legislative intent derived from these statutes to allow the Tax Commission and its legal staff to prosecute and defend actions brought against the tax laws administered by that agency. In this case, public interest was protected because the state, through its Oklahoma Tax Commission, was represented by a statutorily authorized counsel. That being the case, the fact that the Attorney General, as Chief Law Officer of the State, was not also served is no more fatal to the proceeding than failure to serve any other defendant's counsel when initiating an action.

We consider first the Tax Commission's proposition that the District Court erred in ruling that the option given taxpayers by § 2 of House Bill 1484 of the 37th Legislative Session denied equal protection of the law, guaranteed by the 14th Amendment to the U. S. Constitution. Conclusions of Law 2 and 3 state in part that the 1979 amendment of 68 O.S. § 2355 accomplished by HB 1484 violates the aforementioned amendment in that it creates an invidious classification of taxpayers, namely those who use

the federal tax deduction and those who do not. The third conclusion also states the invidious nature of the classification so made is established because there is no lawful, rational or compelling reason for the classification, and on the contrary, the application of the act is unreasonable and illogical in that in certain circumstances one's tax liability is increased by electing to avail oneself of a legal deduction.

■ We hold the classification made in House Bill 1484, *supra*, is not an unreasonable and invidious classification as held in Conclusion of Law No. 3 above, for the reason that it deprives one of a legal deduction. Characterizing the deduction as legal is a conclusion of law not borne out by the record before us. The record demonstrates the House Bill in question establishes a deduction for federal taxes paid only to those taxpayers choosing to use the more progressive tax table. The 1979 amendment took the pre-existing rate schedule, labeled it Method I and restricted its use to taxpayers not deducting federal income tax before arriving at Oklahoma taxable income. Secondly, the Legislature enacted an additional schedule, and allowed the taxpayer to deduct federal income tax before arriving at an Oklahoma taxable income when the taxpayer utilized this second tax rate schedule. Nowhere in the 1979 amendment was federal income tax paid made a general deduction from Oklahoma taxable income. That deduction was limited to individuals choosing, assumedly in their own best interests, to utilize the second rate schedule. The Legislature has defined taxable income generally in 68 O.S.1975 Supp. § 2353.10 as: " 'Taxable income' with respect to any taxpayer means . . . and any other 'taxable income' as defined in the Internal Revenue Code as applies to such taxpayer or any income of such taxpayer . . . ." 68 O.S. 2353.3 found in the same definitional section as the definition above states that "any term used in this act shall have the same meaning as when used in a comparable context in the Internal Revenue Code, unless a different meaning is clearly required." The definition of taxa-

ble income in the context of the Internal Revenue Code is found at 26 U.S.C.A. § 63(a), entitled General Rule:

Except as provided in subsection (b), for purposes of this subtitle the term "taxable income" [shall mean] *gross income*, minus the deductions allowed by this chapter . . . (emphasis added)

■■■■ Turning to the definition of Gross Income at 26 U.S.C.A. § 61, we find this definition is commonly considered legionary in scope: "(a) General Definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived . . . ." With these definitions as a backdrop it is necessary to conclude that there is no general exemption for taxes paid out by a citizen from his income. Income relates to total receipts of a taxpayer and is in no way dependent on what part, or how much, of that income a taxpayer must pay out of his income for the various expense items he is obligated to meet unless those various expenses are as a matter of legislative policy declared to be exempt from taxation, thereby constituting a deduction from income, and made to be so by the Legislature of the state. The authorization to classify various portions of income as deductible in computing income tax is entirely within the legislative arena. *Getty Oil Co. v. Okla. Tax Commission,* 563 P.2d 627 (Okl.1977), Appeal dismissed, 434 U.S. 804, 98 S.Ct. 33, 54 L.Ed.2d 62. Indeed, the last mentioned authority, in addition to *Essley v. Okla. Tax Commission,* 196 Okl. 473, 168 P.2d 111 (1946), and *Homestake Royalty v. Weems,* 175 Okl. 340, 52 P.2d 806 (1936), describe the allowance of a deduction as entirely a matter of legislative discretion.

■■■ In *Essley, supra,* this Court quoted from *Homestake, supra,* addressing itself to the limited role played by the Court in reviewing a legislatively created deduction, and stated the deduction allowed may appear arbitrary but the means and methods of arriving at such deduction are not open to judicial inquiry. If the deduction applies uniformly to all subjects within the classification, the constitutional requirements in that respect are satisfied. Judicial interference is not justified if it does not appear that the classification adopted is based upon an invidious and unreasonable distinction with reference to the subject of the tax.

■■■■ The contested features of the statute attacked here (HB 1484) are similar to the taxing theory presented to this Court in *Walker v. Okla. Tax Commission,* 196 Okl. 207, 164 P.2d 242 (1945), and were held not violative of the tenets of the Equal Protection Clause of the Federal Constitution. The fourth Court syllabus of that opinion approved an income taxation plan which allowed deduction of federal income tax paid only where the income generating the federal tax was not taxable under the Oklahoma tax statute. Thus federal tax paid on that part of income generated in Oklahoma was not deductible from Oklahoma income. The Court syllabus reads:

An income tax statute which permits variations in deductions from gross income in relation to non-taxable income, and which permits variations in the allowance of personal exemptions in relation to whether all income is taxed or not is not invalid . . . as denying equal protection of the law.

*Walker, supra,* 4 P.2d at p. 243.

*Walker, supra,* 164 P.2d at p. 244, contains concise Oklahoma authority for the principle that without legislative sanction no person has inherent right, a right independent of positive law, to exclude federal tax paid from income taxable to Oklahoma. In addition, that case confirms the power of the Legislature to establish classes of taxpayers possessing varied deductions from income. In that case the classifying event was the taxability of that income. There is little practical or conceptual legal difference between a taxation policy establishing two tax rates dependent on deductions utilized; and a tax policy that varies deductions and exemptions in relation to the taxability of the income supporting them. Both situations in effect disclose a policy to tax at a higher rate (in the statute before us expressly, and in *Walker, supra,* indirectly by denying deductions and exemptions) where

the taxpayer has income not taxable in the State. The most immediate differentiation in this situation is that in HB 1484, the taxpayer chooses whether to pay state tax on his income spent to retire his federal obligation, where in *Walker* the act itself specified the taxability of the fund.

Income tax statutes are not invalid simply because they may exact what is popularly called double taxation, even assuming that term should apply to a factual situation where two separate governmental entities exact a tax on income of the same individuals. The United States Supreme Court flatly stated in *Shaffer v. Carter*, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445 (1920), nor even if the effect of this is akin to double taxation, can it be regarded as obnoxious to the Federal Constitution for that reason, since it is settled that nothing in that instrument or the Fourteenth Amendment prevents the state from imposing double taxation, or any other form of unequal taxation, so long as the inequality is not based upon arbitrary distinctions. Citing *St. Louis S. W. Railway v. Arkansas*, 235 U.S. 350, 367, 368, 35 S.Ct. 99, 104, 59 L.Ed. 265 (1914), which states "Nothing in the 14th Amendment imposes any iron-clad rule upon the states with respect to their internal taxation, or prevents them from imposing double taxation, or any other form of unequal taxation, so long as the inequality is not based upon arbitrary distinctions."

In *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938), the Supreme Court considered a tax on income from dividends received from corporations whose principal place of business was within the State of Wisconsin, and as such, those funds had previously been classed as deductions from gross income. The particular tax scheme was attacked on Equal Protection grounds with the taxpayer contending the tax's invalidity was demonstrated by the fact that other classes of income were taxed at a different rate and were entitled to different deductions than the dividends here mentioned and those disparities in the tax burdens which could arise from those rates and deductions infringed the Constitutional immunity. In speaking to the revision of the Wisconsin taxing scheme in *Welch, supra*, the Supreme Court observed it has never been thought that changes in rates, exemptions and deductions involve a denial of equal protection if the new taxes could have been included in the earlier act. The states have been long held to have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation, *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Lehnhausen v. Lake Shore Auto Parts*, 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973), and the fact it may favor a certain class will not demonstrate the arbitrary nature of the distinction if based on either a reasonable distinction or a difference in state policy. *Kahn, supra*, notes that principle has weathered nearly a century of United States Supreme Court adjudication.

The classification here made complies with these principles. The classification is rationally related to the end to be achieved, which is taxation of income. The Legislature has the power to create the deduction for federal tax paid as noted. Having the power to create the deduction in itself establishes two classes of income tax payers, those utilizing the deduction and those refraining to do so. The classification of taxpayers within each category to be obligated to pay taxes at different rates additionally is anything but an arbitrary distinction. The classification presented here taxes a higher percentage of a taxpayer's total cash flow at a lower rate for those not utilizing the federal tax deduction, and a lower percentage of the taxpayer's cash flow at a higher rate when the deduction is utilized. Such a procedure is indeed free from attack on the equal protection grounds discussed. The question of equal protection must be decided in reference to the general classification made, rather than by the chance incidence of the tax in a particular situation on a certain taxpayer, for inequalities that result not from hostile discrimination but occasionally in the appli-

cation of a system that is not arbitrary will not invalidate the act. *Maxwell v. Bugbee*, 250 U.S. 525, 543, 40 S.Ct. 2, 7, 63 L.Ed. 1124 (1919), *Coalgate v. Harvey, supra*.[1]

█ The trial court held that 68 O.S. 1979 Supp. 2355 A (HB 1484) was void for the reason that it violated the initiative and referendum provisions of the Oklahoma Constitution provided for in Article V, Sections 1 through 7. The trial court stated in the conclusions of law drawn in this proceeding that the legislative body of the state may amend or repeal a law enacted through the initiative, *Granger v. City of Tulsa*, 174 Okl. 565, 51 P.2d 567 (1935), but that this Court has set forth the principle that the legislative body may not affect a question while that issue is pending a vote of the people. *In re Referendum Petition # 1*, 203 Okl. 298, 220 P.2d 454 (1950). The trial court therefore concluded that the people had exclusively reserved the entire issue of income taxation and rates by the submission of the State Question to the people. The legislative amendment was declared void and the inquiry is thus: what authority removes this subject from the realm of "all rightful subjects of legislation?" Article V § 36 of the Oklahoma Constitution gives the Legislature exactly this authority in addition to providing that specific grants of authority made in the Constitution are not to "work a restriction, limitation or exclusion . ' . . upon any subject whatsoever." Certainly no restriction on the power of the Legislature to so act can be found in Article V § 7; quite the contrary. That article appears to be sufficient authority standing alone to conclude the Legislature may act in the face of the initiative and referendum or at any time in

the manner it deems appropriate, without the possibility of a suspension of authority, but ever cognizant that it is answerable to the voters at regular intervals, the ballot again appearing to be the citizens' best assurance that government is responsive to the people. Article V § 7 reads:

§ 7. Powers of legislature not affected.

The reservation of the powers of the initiative and referendum in this article shall not deprive the Legislature of the right to repeal any law, propose or pass any measure, which may be consistent with the Constitution of the State and the Constitution of the United States.

█ The lower court relied upon *In re Referendum Petition # 1, supra*, stating in his conclusion: ". . . a legislative body may not affect a question pending before the people . . .." At the outset it is necessary to note that the Missouri Constitution of 1945 contains no provision remotely similar[2] to the last-quoted Oklahoma Constitutional provision, and it is the Missouri authority of *Drain v. Becker*, 240 S.W. 229 (Mo.1922), which is relied upon heavily in *In re Referendum Petition # 1, supra*. Insofar as the trial authority stated the Legislature may not change a question pending before the people by initiative or referendum, we agree with that conclusion. In *In re Referendum Petition, supra*, the question presented to the people was in substance: Do the people of the City of Sand Springs accept or reject the following city ordinance relative to parking meters and parking regulations? The question before the people was to resolve possible approval of *an act*, by referendum. After referendum proceedings began, a change of

---

1. It has been said that such incidental consequences are inherent in government by law instead of government by edict. *Fox v. Standard Oil Co.*, 294 U.S. 87, 102, 55 S.Ct. 333, 339, 79 L.Ed. 780 (1935).

2. The last sentence of the Missouri Constitution of 1945, Art. 3 § 52(b) contains the only language bearing upon the issue and falls far short of the provisions of our Article V § 7:

   Section 52(b). The veto power of the governor shall not extend to measures referred to

the people. All elections on measures referred to the people shall be had at the general state elections, except when the general assembly shall order a special election. Any measure referred to the people shall take effect when approved by a majority of the votes cast thereon, and not otherwise. This section shall not be construed to deprive any member of the general assembly of the right to introduce any measure.

the act would change the *actual question submitted.* Therein lies the determinative distinction between *In re Referendum* and the case at bar. State Question 539 presented an act to the people, and asked if the electorate was desirous of enacting a *certain specific* law by initiative. The Legislature certainly, as in *In re Referendum, supra,* could not change the substance of the measure sought to be enacted by the people, the initiative being "independent of the Legislature." *Okla.Const. Art. V, Sec. 1.* That point is not a denial of the Legislature's power to enact legislation independent of the people without regard to the electorate's initiative and referendum powers. Such power is expressly conferred, exercisable without regard to the initiative and referendum. *Art. V, Sec. 7.* The three Constitutional sections, Article V, §§ 1, 2 and 7, together comprise an initiative system whereby both the people and the Legislature may propose legislation independently, and neither can block the effort of the other during the process, save that the people may by the separate procedure of referendum prohibit a legislatively-passed enactment from becoming law. The Legislature could not change the initiative question proposed by 539. The House Bill 1484 did not change the question initiated however, but simply amended a separate taxation statute. Both acts encompassed the same subject. Had both passed they would have both constituted positive law, and in the case of irreconcilable conflict, the act passed last would be determinative. The point made in *In re Referendum* is correct but not applicable to the facts here, although it does state a principle applicable to initiative measures, and that is that the Legislature may not validly change the question before the electorate. Had HB 1484 purported to amend the provisions of State Question 539 it would have been null and void. It did not, and is not void.

The issue before us is not whether the defeat at the polls of Question 539 should be declared invalid because the legislative Act to take effect in case of the measure's passage constituted a grave impairment of the people's Constitutionally reserved power to make law through the initiative process. That question is not necessary to our decision here for we are not adjudicating an attack on the election results. What we do decide is the validity of a pre-election act of the Legislature, which was not followed by the passage of question 539. What would have happened to the validity of the act had the question passed is similarly beyond our power to reach here.

The judgment of the District Court of Oklahoma County should be and hereby is REVERSED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS and OPALA, JJ., concur.

HODGES, J., concurs in part and dissents in part.

DOOLIN, J., concurs specially.

HODGES, Justice, concurring in part, dissenting in part.

I dissent to that part of the majority's opinion which holds the enactment of 68 O.S.Supp.1979 § 2355(A) (HB 1484) did not infringe upon right of the Initiative Petition 309 (State Question 539).

Passage of State Question 539 would have provided a maximum income tax rate of 6% and a three year graduated deduction for federal income tax paid.

The legislative enactment of House Bill 1484 expressly provided that if State Question 539 was approved by the electorate, then the option given to the taxpayer under Method 2 shall cease and terminate. Also, the legislature enacted a surtax in the event State Question 539 was approved. 68 O.S.Supp.1979 § 2355.1. In my opinion this is a direct infringement upon the initiative process. The people in voting on State Question 539 had no real choice. *In re Referendum Petition No. One,* 203 Okl. 298, 220 P.2d 454 (1950). Therefore, I find that part of 68 O.S.Supp.1979 § 2355(A) under alternative Method 2 to be invalid and would affirm the trial court's judgment to that extent.

I disagree, however, with the trial court's determination that enactment of 68 O.S. Supp.1979 § 2358(B)(8) was valid. By so holding the trial court judgment allows full deduction for federal income taxes paid. Such a judgment is inconsistent with its prior judgment of rendering invalid 68 O.S. Supp.1979 § 2355(A).

The amendment of Subparagraph 8 of Section 2358(B) was vitally connected with Section 2355(A) and is invalid for the same reasons. Both legislative enactments pertain to federal income tax deductions, which also was a part of State Question 539. The legislature cannot enact legislation optionally, which is conditional upon the passage of a State Question.

Inasmuch as both sections are invalid, the income tax structure prior to 1979 should be the current method of taxation. This, however, would not prevent the legislature from enacting a different tax structure this session.

DOOLIN, Justice, concurring specially:

Although I have heretofore indicated that I believe 12 O.S.1971 § 1653 is a mandatory, self-executing and a jurisdictional prerequisite to an appeal by virtue of the rational of *Sendak v. Debro*, 264 Ind. 323, 343 N.E.2d 779 (1976) and *Hydraulic Press Brick Co. v. City of Independence*, 380 Ohio App.2d 37, 311 N.E.2d 872 (1974); I must bow to the majority of my colleagues who are of a contrary opinion, which has become the law of this case.

Being so governed, I concur in the above and foregoing opinion.